THE STATE *ex rel.* CRAIG v. WOODSON, *Judge, et al.*

In Banc, May 21, 1895.

1. **Statutes, Revision of.**  A revision of statutes is intended to take the place of the law as previously formulated and to be a substitute therefor.  It displaces and repeals the former law relating to subjects within its purview and continues in operation whatever of the old law that is restated in it.  Revised Statutes, 1889, section 6606; Revised Statutes, 1879, section 3160.

2. **Election Contest:** DECISION: STATUTE.  Section 4707, Revised Statutes, 1889, with regard to election contests, which provides that "the person holding the certificate of election may give bond, qualify and take the office at the time specified by law, and exercise the duties thereof until the contest shall be decided, and if the contest be decided against him, the court or other tribunal deciding the same shall make an order for him to give up the office to the successful party in the contest * * * and may enforce such order by attachment or other proper legal process" means a decision and order by the trial, and not the appellate court.

3. ———: ———: SURRENDER OF OFFICE: APPEAL.  The trial court, upon rendering final judgment in an election contest against the holder of the certificate, can, pending appeal, compel him to surrender the office and its appurtenances to the contestee and can enforce its order to do so by attachment or other proper legal process.

4. ———: APPEAL: BOND: SUPERSEDEAS.  The appeal bond required to be given by section 4744, Revised Statutes, 1889, providing for appeals from judgments in election contests, does not operate as a *supersedeas* as to anything appealed from except the costs.

The State ex rel. v. Woodson.

5. **Appeal**: BOND: PRACTICE. Appeals in civil cases are regulated entirely by statute and the provisions regulating them must be strictly pursued. Where the statute requires an appeal bond and declares the conditions thereof, it implies that without such bond no appeal lies.

6. **Statutes**: CONSTRUCTION: ELECTION CONTESTS: APPEALS. Statutes relating to ordinary appeals and appeals in election contests are statutes *in pari materia* and should be construed together with reference to the whole system of which they form a part.

7. ——: ——: ——: ——. Statutes on cognate subjects, not strictly *in pari materia,* may be considered as auxiliaries of interpretation of a statute.

## Prohibition.

WRIT DENIED.

*Randolph & Imel* and *Brown & Pratt* for relator.

(1) It does not seem to be questioned that prohibition is the proper remedy to prevent the circuit court from proceeding to make orders for the enforcement of its judgment in a case which has been transferred to this court by appeal which operates as a *supersedeas,* or suspension or vacation of the judgment. *State ex rel. v. Lewis,* 76 Mo. 370; *State ex rel. v. Dillon,* 98 Mo. 90. (2) Under the statutes of this state, the appeal of the relator in the election contest operated as a *supersedeas* of the judgment in that case, or suspended its operation until the decision of the case in this court. R. S. 1889, secs. 4707, 4744. (3) The appeal is simply a continuation of the original proceeding which is pending and undecided from the time of its commencement until the final decision. *Macklin v. Allenberg,* 100 Mo. 337. Both the legislature and supreme court of this state concur in the proposition that in every case in which an appeal is allowed by law, it operates as a *supersedeas* unless otherwise expressly provided by law. Appeals are allowed from

the probate to the circuit court (R. S. 1889, sec. 285), and no provision has been made for a *supersedeas*, yet the appeal is recognized as having that effect. R. S. 1889, sec. 290. Appeals from the county court operate as a *supersedeas*, although the statute is silent upon that subject. R. S. 1889, secs. 3434, 3443; *State ex rel. v. Lewis*, 76 Mo. 370; *Hudson v. Smith*, 9 Wis. 116; *Helm v. Boone*, 6 J. J. Marsh, 351; *Wade v. Society*, 4 S. & M. 671; *Yeaton v. United States*, 5 Cranch, 281. The right to an elective office, as every one will admit, results from the legally expressed choice of a majority of the electors, but how this choice is to be legally expressed and ascertained is a matter of legislative discretion and determination. If the legislature should see fit to do so, unless restrained by some constitutional provision, it may make the declared result by the officer by whom the election is conducted final and conclusive upon all parties. *Williamson v. Lane*, 52 Tex. 335. (4) The history of legislation shows conclusively that it is founded in the principles contended for here, and is absolutely conclusive in favor of the position we have taken. *Boggs v. Brooks*, 45 Mo. 232; Laws, 1867, p. 144; R. S. 1879, sec. 5560, continued in revision of 1889. (5) The circuit court can not place Nash in possession of the office contrary to the provisions of section 1966, Revised Statutes, 1889. (6) At common law, both an appeal and writ of error suspended the judgment or decree as a matter of course. *State ex rel. v. Lewis*, 76 Mo. 370; *Hudson v. Smith*, 9 Wis. 116; *Helm v. Boone*, 6 J. J. Marsh, 351; *Wade v. Society*, 4 Smedes & M. 671; *Railroad v. Atkison*, 17 Mo. App. 494; *State ex rel. v. Vogel*, 6 Mo. App. 528. And where the appeal is given by statutes, the effect is the same unless the legislature sees fit to make positive provision to the contrary. *State ex rel. v. Lewis, supra; Hudson v.*

*Smith, supra.* (7) Section 3160 of the Revised Statutes of 1879 expressly provides that "the provisions of the revised statutes, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws, and not as new enactments." It is not necessary that, to bring it within this rule, the provision of the revision should be in the same words as that of the prior law. It is sufficient if it be "substantially" the same. *Dart v. Bagley*, 110 Mo. 42. This is in accordance with a principle of law so old and well settled that it can not now be questioned. "Where the law, antecedently to a revision, was settled, either by clear expression of statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law unless such phraseology evidently purports an intention in the legislature to work a change." *Taylor v. Delaney*, 2 Cai. Cas. 149; *Yate's Case*, 4 Johns. (N. Y.) 317; *Ennis v. Crump*, 6 Tex. 34; *Ash v. Ash*, 9 Ohio St. 383; *Conger v. Barker's Adm'r*, 11 Ohio St. 1; *In the matter of Brown*, 21 Wend. 316; *Theriat v. Hart*, 2 Hill, 380; *Goodell v. Jackson*, 20 Johns. (N. Y.) 693; *Myer v. Car Co.*, 102 U. S. 1, 11.

*B. R. Vineyard* for respondent Woodson.

(1) "The writ of prohibition goes only to restrain the assumed exercise of jurisdiction where none exists, and not to its erroneous or irregular exercise. It can not issue where other adequate remedies exist, nor be made to perform or usurp the functions of an appeal." *State v. Klein*, 116 Mo. 268; *State ex rel. v. Court of Appeals*, 99 Mo. 216; *State ex rel. v. Burckhartt*, 87 Mo. 533. (2) It may be stated of appeals generally, where the appellate court does not try the case *de novo*, but simply sits in judgment upon the errors which may

have occurred at the trial in the lower court, the judgment of the trial court is binding upon the parties, as to every question decided, until annulled or reversed upon the final disposition of the appeal. In certain cases, where the statute so provides, the giving of an appeal bond will prevent the issuance of an execution, but, even in those cases, the judgment itself is in no way affected by the appeal. Freeman on Judgments, sec. 328; *Railroad v. Atkison*, 17 Mo. App. 484; *Banks v. Wheeler*, 28 Conn. 441; *Rogers v. Hatch*, 8 Nev. 39; *Nill v. Comparet*, 16 Ind. 107. And this court, in contested election cases, can only exercise appellate jurisdiction, and in doing so can not try the case *de novo*. *Vail v. Dinning*, 44 Mo. 210. (3) The judgment of a court of competent jurisdiction ousting an officer from the official position held by him is self-enforcing. The officer against whom the judgment is rendered is, from the date of its rendition, by virtue of the judgment itself, stripped of every official prerogative and stands from that time forth simply as a private citizen. No execution or process is needed for the enforcement of the judgment, so far as the divestiture of the office from the incumbent and the investiture of the contestant with the right thereto, is concerned; it is self-executing. *Welch v. Cook*, 7 How. Pr. 282; *People v. Conover*, 6 Abb. Pr. 220; *McVeaney v. Mayor*, 80 N. Y. 185; *Walls v. Palmer*, 64 Ind. 493; *McVeaney v. Mayor*, 59 How. Pr. 115; *Allen v. Robinson*, 17 Minn. 113; *People v. Head*, 25 Ill. 325; *Jayne v. Drorbaugh*, 63 Iowa, 711; *Fulgham v. Johnson*, 40 Ga. 164; *People v. Stephenson*, 98 Mich. 218; *State v. Meeker*, 19 Neb. 444. (4) And the giving of a bond on an appeal from a judgment of ouster, in a contested election case, will not operate to keep the unsuccessful contestee in office, during the pendency of the appeal. *Allen v. Robinson*, 17 Minn. 113; *Jayne v. Drorbaugh*, 63 Iowa, 711; *Peo-*

ple v. Head, 25 Ill. 325; Fulgham v. Johnson, 40 Ga. 164; People v. Stephenson, 98 Mich. 218; State v. Meeker, 19 Neb. 444. (5) Certainly a judgment of ouster from office is as much self-operating as a decree of injunction. And yet, on appeal from an injunction, where the usual statutory appeal bond had been given, this court, in denying a writ of prohibition, says: "A stay of proceedings, from its nature, operates only on orders and judgments commanding some act to be done, and does not reach injunctions." State ex rel. v. Dillon, 96 Mo. 61; Genet v. President, 113 N. Y. 475; Railroad v. Railroad, 71 N. Y. 430. In fact, all self-enforcing judgments are unaffected by the taking of appeals therefrom, or the giving of bonds in support of such appeals. Elliott on Appellate Procedure, sec. 392; Walls v. Palmer, 64 Ind. 493. (6) Proceedings for contempt, though properly entitled in the action down to the attachment, are special proceedings, and not proceedings in the action at all. Sudlow v. Knox, 7 Abb. Pr. 411; Brinkley v. Brinkley, 47 N. Y. 40; Railroad v. Railroad, 71 N. Y. 430; 5 Am. and Eng. Encyclopedia of Law, p. 390. The provision in section 4707 for an attachment upon a judgment of ouster in a contested election case, in the event of disobedience to the order of the court, is simply a recognition of the inherent power of the court to have its judgments respected. The incumbent, by virtue of the judgment proprio vigore, is ousted from the office, and any interference by him thereafter with its duties puts him in contempt of court, for which he may be properly attached and punished. See authorities just cited. (7) If the trial court had jurisdiction to consider the question, this court has no power to interfere before that consideration is had. State v. Klein, 116 Mo. 268. The effect of the judgment of ouster was, by virtue of its inherent, self-operating force, to turn Craig out of

office, so that he was in no position to question the right of Nash. (8) The trial court, upon rendering final judgment, had power, pending appeal, to compel relator to surrender the office and to enforce its order to do so by attachment. R. S. 1889, sec. 4707. (9) The appeal did not operate as a *supersedeas* as to anything appealed from except the costs. R. S. 1889, sec. 4744.

*Hall & Woodson, Huston & Parrish, Casteel & Haynes* and *James W. Boyd* for relator Nash.

(1) Section 4707 of Revised Statutes, in providing that the party holding the certificate of election shall retain the office until the contest shall be decided, refers to, and means, the decision of the contest in the court having original jurisdiction. This is true, because when said section was enacted, in 1855, and down as far as 1867, no appeal lay in favor of either party, in a case of contested election. *Boggs v. Brooks*, 45 Mo. 232. (2) The provisions of the general statutes on the subject of appeals and *supersedeas* have no application whatever to cases of contested election. The general statutes do not even provide an appeal. No appeal lay until 1867. The special provisions in the election law on the subject of appeal are exclusive and controlling. (3) The right of an appeal is not a natural or inherent right, but is a mere creature of the statute. The right to an appeal in the case of contested election rests solely upon section 4744, Revised Statutes, and is subject to the conditions and limitations prescribed thereby. (4) A *supersedeas* does not follow an appeal as a matter of right. Where the appeal gives to the appellant the right of a trial *de novo* in the appellate tribunal, the appeal itself vacates the judgment, and the cause stands for trial in the appellate tribunal as if it had originated

therein.    But where the appeal acts as a writ of error, and simply takes the record of the trial court to the appellate tribunal for review, the judgment of the trial court stands unaffected by the appeal, unless the statute on the subject clearly provides to the contrary.    *Lewis v. Railroad*, 59 Mo. 495;    *Railroad v. Atkison*, 17 Mo. App. 485.    (5) Section 4744, Revised Statutes, was enacted in 1879, appearing in the revision of that year for the first time, and was enacted in lieu of the act of 1867 on the subject of appeals in cases of election contests, which act of 1867 was repealed.    The revision of 1879 occurred subsequent to the decision of the case of *Boggs v. Brooks*, 45 Mo. 232, in which it was held that an appeal to the circuit court from a judgment against the contestee in the case of contested elections gave to the contestee under the act of 1867 the right to a trial *de novo* in the circuit court.    This decision was based upon certain provisions of the act of 1867 touching the form of the appeal bond.    Those provisions are wanting in the section of the present statute which was enacted, as said, in 1879.    If the appeal from a judgment of the county court in the case of a contested election still gives a trial *de novo*, then the appeal vacates and annuls the judgment, and it becomes as if it had never been.    But an appeal from the circuit court has no such an effect.    By the express language of the statute, the appeal is given "in the same time and manner as appeals in other civil cases," and the most that relator can contend for is that the appeal has the same effect as, but not greater than, appeals in civil cases.    (6) And thus we see that section 4744, Revised Statutes, much as relator declares against such possibility, does provide by the same words for appeals in election contests, of different characters and with different effects.    The appeals are to be taken at different times and in different manners, depending upon the

courts from which and to which they are taken. Why should not the appeals also have different effects depending upon the same facts? (7) In ordinary civil suits an appeal in the nature of a writ of error has no effect upon the judgment, except when the statute provides for an appeal bond and prescribes that said bond shall act as a *supersedeas*. And then the judgment remains intact, its enforcement by execution and other process being merely superseded. The judgment itself is still in full force and effect. *Lewis v. Railroad*, 59 Mo. 495; *State ex rel. v. Dillon*, 96 Mo. 56; *Allen v. Robinson*, 17 Minn. 90; *Railroad v. Atkison*, 17 Mo. App. 484, and cases cited. (8) But where the judgment is self-enforcing, and needs the aid of no writ or other process, the appeal does not have any effect whatever upon the judgment unless the statute expressly so provides. The judgment being self-enforcing, the appeal, in the very nature of things, could have no effect upon it except to vacate and set it aside, and this effect is never given to an appeal in the nature of a writ of error in the absence of an express provision of the law so declaring. *Allen v. Robinson*, 17 Minn. 90; *Jayne v. Drorbaugh*, 63 Iowa, 711; *State ex rel. v. Knight*, 50 N. W. Rep. (Wis.) 1012; *Welch v. Cook*, 7 Howard's Prac. Rep. 282; *State v. Meeker*, 19 Neb. 444; *State v. Mayer*, 44 N. W. Rep. 90; *Fulgham v. Johnson*, 40 Ga. 164; *State v. Stephenson*, 98 Mich. 218, 57 N. W. Rep. 115; *Gandy v. State*, 10 Neb. 243; *McVeaney v. Mayor*, 80 N. Y. 186, 59 How. Pr. 115; *Walls v. Palmer*, 64 Ind. 493; 96 Mo. 56, *supra;* 59 Mo. 495, *supra.* (9) The judgment against the relator declaring that he was not elected to the office of the clerk of the county court was self-enforcing. Upon the rendition of that judgment, the relator ceased *eo instanti* to be the *de facto* officer; the *prima facie* character of his certificate of election was destroyed; he became a

usurper in the office. 50 N. W. Rep. 1012; Mechem on Public Offices, sec. 497; High on Extr. Leg. Rem., sec. 756; *Fulgham v. Johnson*, 40 Ga. 164; *Allen v. Robinson*, 17 Minn. 90; *People v. Stephenson*, 98 Mich. 218; *Welch v. Cook*, 7 How. Pr. 282; *McVeaney v. Mayor*, 80 N. Y. 186. "The judgment requires no aid from process to give it effect." 98 Mich. 218. His appeal, in the absence of an express provision of the law to the contrary, did not, and could not, in the very nature of things, affect the judgment; the judgment was not annulled thereby, but it remained in full force and effect. Such seem to be the uniform rulings of all the courts on this question. The authorities cited above seem to be conclusive on these points, and a number of them expressly hold that a *supersedeas* does not lie in a contested election case, and there is not one authority to the contrary so far as we can ascertain. (10) It may be that the appeal bond, being for the costs, had the effect to stay execution for the costs, but it had no other effect. (11) Notwithstanding the appeal, the judgment of ouster against the relator was still in effect, and could have been enforced by any appropriate proceeding. An original proceeding, outside of the election contest case, could have been instituted to carry out and enforce the judgment. *Mandamus* would now lie to enforce the judgment of ouster. The provisions made by the statute for enforcing the judgment are simply cumulative; the common law modes of enforcing a judgment are still in force. Besides, the statute does not provide for process in the case itself. The writ of attachment is the only process specified, and is an independent and original writ. (12) Something has been said by the relator about respondent Nash's right to take possession of the office. That is a matter which does not concern the relator. Under the judgment, relator is a usurper in the office,

and, as such, he has no right to question in this proceeding, the title of his successor to the office. (13) The sole question here for decision is the jurisdiction of the circuit court to proceed to enforce its judgment. If the appeal vacated that judgment, then the circuit court has no such jurisdiction; if the appeal did not have that effect, then the circuit court has such jurisdiction. The title of Nash, or of any other claimant to the office, does not, and can not, concern the relator in this proceeding.

SHERWOOD, J.—Enos Craig received his certificate of election as clerk of the county court of Buchanan county in November, 1894, it having been ascertained by the votes cast up and counted that he had received one more vote than Nash, his opponent and competitor for that office. In due time thereafter, Craig received his commission from the governor, and, having qualified, etc., according to law, on the seventh of January, 1895, he took possession of the office in which he has ever since continued performing the duties thereof.

Nash in due form contested the validity of Craig's election, and thereupon such proceedings were had as resulted in a judgment in the contestant's favor on the nineteenth day of February, 1895, in the Buchanan circuit court, that court, pursuant to the provisions of section 4707, Revised Statutes, 1889, adjudging that Nash was duly and legally elected clerk of the county court aforesaid, and ordering that Craig should give up the office to Nash, and deliver to him the books, etc. Upon this, Craig filed his motions for a new trial and in arrest, both of which were, on the second of March, 1895, denied, and Craig then filed his affidavit for an appeal, which was allowed.

On the fourth of March next thereafter, Craig appeared in court and asked the court to fix the amount

of his appeal bond, and, on its being ascertained that the accrued costs were about $1,000, and those likely to accrue would be some $200 more, the court fixed the amount of the appeal bond at $2,400, a sum considered to be double the amount of the certain and contingent costs.

On the next day, however, the attorney for Craig appeared and tendered a bond in the sum aforesaid, but containing conditions applicable to bonds in *ordinary* appeals to this court, as specified in section 2249, Revised Statutes, 1889, and not such as provided for in section 4744. But the trial court refused such a bond and, on the attorney professing his ignorance of how to prepare a bond conditioned as provided in the section last named, kindly proffered its assistance and dictated a bond as required in that section.

The conditions of the bond thus dictated and accepted by the court were as follows: "That said appellant, Enos Craig, shall prosecute his appeal with due diligence to a decision in the said supreme court, and shall pay all costs that have accrued, or that may accrue, in said cause."

Those of the bond rejected were these: "The said appellant, Enos Craig, shall prosecute his appeal with due diligence to a decision in the appellate court, and shall perform such judgment as shall be given by such court, or such as the appellate court may direct the circuit court to give, and if the judgment of such court, or any part thereof, be affirmed, shall comply with and perform the same so far as it may be affirmed, and pay all damages and costs which may be awarded against the appellant by any appellate court, and pay all costs accrued and to accrue in said cause."

On the fourth of March, the day next preceding that on which the appeal bond of Craig was accepted, Nash served on Craig a certified copy of the judgment

of ouster rendered some three weeks before that, and then Nash presented a copy of said judgment to the county court and also a good and sufficient bond, and requested its approval of the same, but that court deferred the matter until the following Wednesday, March 6, when Nash again offered and renewed his request for the approval of his bond, but without effect.

On the next day, March 7, Nash took the oath of office as clerk, etc., and had the same recorded as provided by law, and, having done so, on the same day moved the circuit court for an attachment against Craig to enforce the order made in the cause and bottomed upon the judgment aforesaid, for the delivery by Craig of the office, papers, etc., to Nash. This motion of Nash's was granted, and the attachment issued, made returnable on March 11; but, prior to that date, to wit, March 9, certain judges of this court granted a rule against A. M. Woodson, judge of the circuit court, as well as against Nash, commanding that they show cause why a writ of prohibition should not issue as prayed by relator Craig.

On March 8, after having recorded his oath of office, Nash again appeared before the county court and asked that court to approve the bond, but met with failure again, because the county court alleged that a contest for the office was pending.

The foregoing facts thus briefly related form the basis on which rests the salient question in this record, to wit: What was the legal force and effect of the appeal taken, and bond given, by relator Craig?

Section 4707, Revised Statutes, 1889, to which allusion has been made, declares: "In every case of a pending contested election, the person holding the certificate of election may give bond, qualify and take the office at the time specified by law, and exercise the

·duties thereof until the contest shall be decided; and if the contest be decided against him, the court or other tribunal deciding the same shall make an order for him to give up the office to the successful party in the contest, and deliver to him all books, records, papers, property and effects pertaining to the office, and may enforce such order by attachment or other proper legal process." This section has been the law· for about thirty years, and is first found in the Revised Statutes of 1855, page 706, section 56, since which time it has remained unchanged. G. S. 1865, p. 66, sec. 53; R. S. 1879, sec. 5529.

Under the law as orginally enacted, no appeal lay from the judgment rendered, and the "decision" of the trial court was, consequently, absolute and final. The contest at that time was most certainly *"decided"* by the trial court, and no other court could, at that time, after rendering judgment against the certificate holder, make the order to him to give up the office, books, etc., to the "successful party in the contest." Afterward, however, the right of appeal was granted in such cases, whereby an appeal was had from the county court to the circuit court, where a trial was had *de novo*, and appeals were allowed from the circuit court to the supreme court, but in neither case was a bond to be given except for the payment of costs, and in the case of an appeal from the judgment of the county court, the appellant's bond had to contain a condition that he would "prosecute his appeal with due diligence to a decision." The bond in the circuit court, however, as to cases tried there in the first instance, contained no such condition. Laws, 1867, p. 114; *Boggs v. Brooks*, 45 Mo. 232.

Section 6 of the act just referred to made provision for the issuance of writs of error from the decisions of the circuit courts in such cases, as in any other civil

proceeding, and section 7 of the act also contained a provision that when an appeal should be applied for, *at the time of the judgment or decision,* no steps should be taken or proceeding had to enforce such judgment, etc., until the time for taking such appeal had lapsed. Thus clearly implying that if the application for an appeal were *not* made at the time of judgment rendered, there would be no barrier to the issuance and enforcement of a proper writ in favor of the contestant.

But it is needless further to discuss the act of 1867, since several of its provisions have been eliminated by the revision of 1879, which in section 5560 (now section 4744, R. S. 1889) declares that: "In all cases of contested elections the right of appeal shall exist, and appeals may be taken in the same time or manner and to the same courts as is or may be provided by law with respect to appeals in ordinary civil actions; and writs of error shall lie in such cases as in civil actions. In every such case of appeal a bond with sufficient sureties shall be given, conditioned for the payment of the costs accrued and to accrue in the cause; and a new bond shall be given when required by any court in which the cause may be pending."

And this elimination doubtless occurred by operation of section 3160, Revised Statutes, 1879, now section 6606, Revised Statutes, 1889, providing that: "All acts of a general nature, revised and amended and re-enacted at the present session of the general assembly, as soon as such acts shall take effect, shall be taken and construed as repealing all prior laws relating to the same subject; but the provisions of the Revised Statutes, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws, and not as new enactments."

But could we regard section 7 of the act of 1867 as still in force, despite the revision of 1879, relator cer-

tainly can not take any advantage from that section by reason of the fact that he made no "application for an appeal  *  *  *  at the time of the judgment or decision," so that even under that section, treating it as still in force, it was perfectly competent for Nash to do as he did do in moving for an attachment against relator though the time for taking an appeal had not elapsed.

However, as already stated, that section has been *revised out of the statute*, and consequently can no longer be made the basis of reasoning favorable to relator, even if applicable to his method of procedure in regard to his appeal.

And further in regard to the revision of 1879, it may be added that section 3160 is but declaratory of a well established rule of construction, that: "A revision is intended to take the place of the law as previously formulated. By adopting it the legislature say the same thing, in effect, as when a particular section is amended by the words 'so as to read as follows.' The revision is a substitute; it displaces and repeals the former law as it stood relating to the subjects within its purview. Whatever of the old law is restated in the revision is continued in operation as it may operate in the connection in which it is re-enacted.  *  *  * The reasonable inference from a revision is that the legislature can not be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law." Sutherland, Stat. Constr., sec. 154.

Taking the view, then, already announced, it is proper to consider the meaning of sections 4707 and 4744, already set forth, when placed in juxtaposition

and considered, as they must be, in connection with, and in interpretation of each other.

As before stated there can be no doubt that under the terms of section 4707 as it originally stood, the "contest" was *"decided"* in the circuit court, for no appeal then lay from the "decision." This being the case, the question now presented is, what force and effect does section 4744 have on section 4707. It is claimed by counsel for relator that the word *"decided"* means that the "controversy is at an end." But that this is not the meaning of the word is obvious from these considerations: That unless the controversy were at an end, to wit, *a final judgment therein reached and rendered, no appeal would lie,* and consequently the certificate holder would be without remedy, because the same rule holds as to appeals as to writs of error at common law, that nothing short of a final judgment will authorize the invocation of relief in an appellate court. 1 Freeman on Judgments [4 Ed.], sec. 16 and cases cited; 1 Am. & Eng. Encyclopedia of Law, 617, tit. Appeal. In order to warrant an appeal there must be a decision by a judicial tribunal. Elliott, App. Proc., sec. 15. "An attempt to appeal before final judgment will be fruitless." *Ibid.*, sec. 243.

A judgment or decree is final when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined. *Railroad v. Express Co.*, 108 U. S. 24.

And a contest can hardly be said to be undecided wherever a final judgment has been rendered. And this position gains additional strength when we consider that by the terms of section 4707, as originally enacted and as at present worded, the same court that decided the contest enforced its order by attachment.

Have the words of the section been robbed of their original signification? If so, how has this been accomplished? As there is no intimation in the section that an appellate tribunal is to enforce the order as made by the trial court, as the duty of the appellate tribunal is simply that of affirmance or reversal, it seems too clear for dispute that the court of first instance that awards the attachment, must have decided the contest and *vice versa.*

Now, if the contest is *"decided"* whenever final judgment is rendered by the circuit court, then, according to the very terms of the section under review, the right of the certificate holder to exercise the duties of the office only lasts "until the contest be decided," provided it "be decided against him." At that juncture he must surrender the office and its appurtenances to the "successful party in the contest" unless he can continue to hold the office through the means furnished by section 4744. But it can not fail to be observed that that section grants no *supersedeas* as to anything appealed from except as to *costs.* This being ascertained, it must needs follow that the judgment rendered must remain unaffected by the appeal taken. This upon the familiar principle that "the enumeration by a statute of persons or things to be affected by its provisions amounts to an implied exclusion of others. * * * When a statute specifies the effects of a certain provision, courts will presume that all the effects intended by the lawmaker are stated." Sutherland, Stat. Constr., sec. 327. Here, affirmative specification excludes implication. *Maguire v. Savings Ass'n*, 62 Mo. *loc. cit.* 346.

The right of appeal in civil actions was unknown to the common law; it is regulated wholly by statute. 3 Black, Com., 402. It had its origin in the civil law. 1 Am. & Eng. Encyclopedia of Law, 616. Being stat-

utory in its origin, it is essential to the exercise of the right that the statute be *strictly pursued.* And where, as here, the statute lays down the condition of the bond, and declares that *"in every such case of appeal a bond, etc., shall be given,"* it implies a negation that *without such bond no appeal lies,* and it implies, also, with equal force of necessary implication that *other conditions* to effect other ends are ineffective, and inadmissible.

That such was the legislative intent as contained in section 4744 is apparent from another consideration, to wit:   That the legislature, when providing for appeals from circuit courts in other civil cases, *prohibited* the appeal from operating as a *supersedeas* except on condition that the appellant "enter into a recognizance to the adverse party, in a penalty double the amount of whatever debt, damages and costs, or damages and costs, have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages that may be recovered in any appellate court upon the appeal, conditioned that the appellant will prosecute his appeal with due diligence to a decision in the appellate court, and shall perform such judgment as shall be given by such court, or such as the appellate court may direct the circuit court to give, and if the judgment of such court or any part thereof be affirmed, that he will comply with and perform the same, so far as it may be affirmed, and will pay all damages and costs which may be awarded against the appellant by any appellate court."   R. S. 1889, sec. 2249.   Thus making a striking contrast between an *ordinary* appeal and one taken under the election law.

In the former instance the recognizance covers the *whole* case.   It requires the appellant to prosecute his appeal with due diligence to a decision in the appellate

court and that he shall perform such judgment, etc. No such conditions appear in the bond required by the terms of section 4744 of the election law. The absence of such well known provisions and conditions from that section is a circumstance pregnant with significance that the legislature knowing, as they will be presumed to do, the state of the existing law on the subject of appeals in cognate cases (Sutherland, Stat. Constr., sec. 287), purposely omitted such conditions from the election appeal bond, thereby in effect saying that such omitted conditions should have no place in the election law. Besides, the statutes relating to ordinary appeals and to election appeals are statutes *"in pari materia" and therefore* to be construed together with reference to the whole system of which they form a part. In keeping with this idea, statutes not strictly *in pari materia*, statutes on cognate subjects, may be brought within range of the construing vision as needed auxiliaries in the work of interpretation. Sutherland, Stat. Constr., secs. 284, 288.

Besides, counsel for relator, when they proffered to the lower court a bond conditioned as provided in *ordinary cases*, tacitly conceded and confessed that a bond conditioned as provided in the *election law* would not supersede the judgment rendered against their client.

Again, having determined from section 4744 that no appeal can be allowed in an election contest unless a bond conditioned as required be given, then it becomes needless to speculate on the effect of a *simple appeal* taken without bond, since no such case is here presented, nor could be under section 4744. But while on this head it may, however, be remarked that whatever may be the effect of an appeal taken to an appellate court where the trial is to be *de novo*, an appeal taken and operating in the nature of a writ of error or *cer-*

*tiorari*, does not vacate or suspend the judgment of the inferior court, nor bar an action on the judgment. *Railroad v. Atkison*, 17 Mo. App. 484, and cases cited; *Lewis v. Railroad*, 59 Mo. 495, and cases cited.

And it has been ruled in an election contest that though a *supersedeas* bond be filed, yet it will avail nothing against the successful contestant because there was no *express* provison of the statute *authorizing a suspension of the judgment*, in such case, although there were in the statutes the usual general provisions respecting a stay on appeal taken, the court remarking that "the provisions for *supersedeas* are not as broad as those for the review of judgments on error." *State ex rel. v. Meeker*, 19 Neb. 444; *State ex rel. v. Mayor*, 44 N. W. Rep. (Neb.) 90.

In *Jayne v. Drorbaugh*, 63 Iowa, 711, it is said: "When it has been determined * * * in a proper proceeding, that a person is entitled to the possession of a civil office to which he claims to have been elected by the people, an appeal * * * should not have the effect to deprive such person of such office, pending the appeal, unless the statute in terms so provides." See, also, *People ex rel. v. Stephenson*, 98 Mich. 218.

In the case at bar it will be remembered that not only is there no such express provision, but, as before stated, section 4744 excludes, by inevitable implication, any such effect being given to the bond required.

Counsel for relator have cited the case of *Grelle v. Pinney*, 62 Conn. 478 as being directly in point as showing that an appeal in a contested election case operates as a *supersedeas*, but this is so ruled because "section 1134 provides that after such appeal execution shall be stayed until the final determination of the cause."

Furthermore, when a judgment of ouster is rendered, whatever may be the form of procedure,

whether by *quo warranto* or information in that nature, or some special statutory method, the result reached is the amotion of the then tenant of the office, and the party thus ousted is divested of all official authority so long as the judgment remains in force.  High, Extr. Leg. Rem. [2 Ed.], secs. 756, 746, and cases cited.  Such judgment is self-enforcing.  *Welch v. Cook*, 7 How. Pr. 282; *McVeany v. Mayor, etc.*, 80 N. Y. 185; *State ex rel. v. Meeker*, 19 Neb. 444; Mechem, Pub. Off., sec. 497; *State ex rel. v. Johnson*, 40 Ga. 164.

And when a judgment is self-enforcing, a *supersedeas* does not alter the state of things created by the judgment from which the appeal is prosecuted.  Elliott, App. Proc., sec. 392, and cas. cit.   This doctrine finds striking illustration in a case where a judgment suspended an attorney from practice, and it was ruled that the judgment executed itself, except as to collection of *costs* and that granting a *supersedeas* only suspended the right of such collection and did not allow the attorney to practice pending the appeal.   *Walls v. Palmer*, 64 Ind. 493.

In *Mayor, etc., v. Shaw*, 14 Ga. 162, where Shaw, the marshal of Macon, had been removed by the mayor and council on charges preferred, it was held that a writ of *certiorari* did not reverse that judgment, nor supersede the execution of it.

And in *State ex rel. v. Meeker, supra*, it was ruled that where an officer has been removed for misconduct by a county board, that the removal by the judgment of ouster having been accomplished, the filing of a *supersedeas* bond did not reinstate the removed officer.

For the reasons aforesaid, we hold that the appeal taken and bond given by relator, after judgment of ouster pronounced against him, did not vacate, supersede or in any manner affect that judgment, and therefore the trial court very properly issued an attachment

against him. In consequence of this view, we deny the writ of prohibition. GANTT, MACFARLANE, BURGESS and ROBINSON, JJ., concur. BRACE, C. J., and BARCLAY, J., dissent.

BARCLAY, J. (*dissenting*).—The ruling question in this case is whether an appeal, duly taken, with bond given as provided by statute, suspends the execution of a judgment by the circuit court, in a contested election case, until the appeal can be passed upon by the appellate court.

Our learned brethren answer this question in the negative. We think, with all due respect, that it should be answered in the affirmative.

The question is important enough to warrant a short statement of some reasons that lead us to dissent.

The case turns at last on the meaning to be given to the words, "until the contest shall be decided," as they occur in section 4707 (R. S. 1889). We hold that those words refer to the final decision of the contest, wherever that may occur.

1. In our opinion it does not follow from the fact that a judgment is final, within the meaning of a law permitting an appeal only from a final judgment, that it therefore is necessarily to be held final for the purpose of enforcement pending an appeal taken from it, as our brethren seem to say. Whether or not it is so enforceable, in the face of an appeal, depends on the intent of the lawmakers as expressed by the statutory regulations of the subject of appeal.

In the case at bar, the inquiry whether the circuit judgment in an election contest is sufficiently final to support an appeal seems to us unimportant, since the statute expressly gives an appeal in that class of cases. R. S. 1889, sec. 4744.

The right of appeal now exists in Missouri in many instances where no final judgment has been rendered. Laws, 1891, page 70, amending section 2246, Revised Statutes, 1889.

In ordinary civil actions in Missouri, an appeal, because of the express terms of law, operates as a stay of execution upon the giving of bond in compliance with the statute. Revised Statutes, 1889, sections 2249 and 2250. But where a proper bond is given, the appeal is held to operate a stay of any affirmative action, or process, to carry out the judgment pending the appeal, notwithstanding the fact that the judgment may be final enough to support an appeal. *State ex rel. v. Lewis* (1882), 76 Mo. 370; *State ex rel. v. Ranson* (1885), 86 Mo. 327.

By virtue of the statute concerning appeals in contested elections, the only appeal bond required is for costs. Section 4744. The giving of that bond and the usual affidavit perfect the appeal, and bring the jurisdiction of the appellate court to bear upon the case. Yet, in that condition of the record, our learned brethren hold that the contest is "decided," and that the affirmative process (necessary under section 4707) to enforce the judgment may be issued and executed at once, by the circuit court, notwithstanding an appeal may be pending to review that judgment.

If that view shall ultimately prevail, and if each decision during the progress of the case is to be held final for the purpose of effecting a change of officers, we might, in one contest, see, first, the contestee filling the disputed office, under his certificate of election; next, the contestant taking it under a judgment of the circuit court; then, upon a possible reversal of that judgment for some error of law, the contestee would be replaced, until a second trial could occur on the circuit, with, perhaps, more changes upon further litigation.

Thus the office might be tossed about like a shuttle-cock between the two claimants until the contest should be "decided" by a judgment, which would really be the conclusion of the law as applied to the controversy.

We do not believe such results were intended by the statutes on this subject, and hence that a construction permitting those results is not sound.

When the appeal has been duly perfected and bond given, as the statute directs, it should be held to stay all process requiring any act to be done, commanded by the circuit court judgment. That is, on principle, the normal effect of such an appeal in the nature of a writ of error, in the absence of statutory provisions to the contrary. That proposition was positively declared in *Hudson v. Smith* (1859), 9 Wis. 122, quoted and followed in Missouri in *State ex rel. v. Lewis* (1882), 76 Mo. 370, as well as in Wisconsin in a later opinion by Chief Justice RYAN. *Insurance Co. v. Hotel Co.* (1875), 37 Wis. 125.

We consider that the contest should not be regarded as "decided" until finally decided in due course; and that no intermediate judgment, duly appealed from, should be carried into execution during such an appeal.

2. But whatever doubt there may be as to the meaning of the words "until the contest shall be decided," in section 4707 (standing alone or read in connection with section 4744), we think is cleared away upon considering another section of the statute bearing on proceedings of this nature, namely, section 8611 (Revised Statutes, 1889).

It is there provided that whenever any office, the emoluments of which are required to be paid from the state treasury, shall be contested, no warrant shall be drawn or paid for the salary attached to said office, until the right to the same shall be "legally deter-mined" between the parties claiming such right, with

a proviso that the person to whom the commission for such office shall have issued may receive the salary of the office as it falls due, upon giving bond to the claimant, in double the amount of the annual salary of the office, conditioned to pay to the latter the salary so received (with interest) in event of a decision in favor of the latter, "upon final determination of the rights of the contestants."

The section further makes it the duty of every contestant to notify the state auditor of his contest under the penalty of not having it heard until such notice has been given.

The provisions of law just mentioned seem to us to make it very plain that the words "legally determined" and "upon final determination of the rights of the contestants," occurring in that section, are used to express the same legislative thought. It is evidently the same thought embodied in the words, "until the contest shall be decided," in section 4707.

The section for the stoppage of state salary during a contest for an office paid by such salary is a part of the body of statutory law regulating contested elections. Hence, on the authority of a ruling of our learned brethren in this very case, that section may properly be considered in gathering light to construe any doubtful passages in other parts of that law.

That section (8611) does not, it is true, apply to offices paid by fees, as is the one in contest between Messrs. Nash and Craig in the case at bar. But, on the other hand, no different mode of procedure is provided for reviewing contests in that class of cases from the mode prescribed for other offices.

The phrase "until the contest is decided," in section 4707, applies to offices with a state salary as well as to the office in question in Mr. Nash's pending contest. Yet the section governing contests for offices

paid by the state obviously contemplates no payment of salary without bond, until "final determination of the rights of the contestants." The whole tenor of that section reveals that its provisions are intended to supply (in the cases mentioned) the full effect that an appeal bond produces in ordinary actions. The facts that no such bond is demanded where the office is compensated by fees, and only a bond for costs is then required (section 4744) merely disclose the legislative purpose to give the incumbent of such a contested office the fees thereof while he discharges its duties.

But no difference is made by the statute law, as to the mode of, appeal in the two classes of cases, or as to the right of the holder of the certificate to keep the office "until the contest is decided."

Reading all these sections together, it appears to us that the intent of the legislature to leave the person obtaining the certificate of election in possession of the office until "final determination of the rights of the contestants" (as said in section 8611) is very manifest. That intent, we say with due deference, should be carried out by this court.

The rule for a prohibition should be made absolute, and we respectfully dissent to the judgment of our learned colleagues to the contrary. BRACE, C. J., joins in this opinion.