**STATE of Missouri, ex rel. Jeremiah W. NIXON, Attorney General of the State of Missouri, Relator,**

**v.**

**The Honorable Ronald M. BELT, Special Judge of the Circuit Court of Clay County, Missouri, Division Two, Respondent.**

**No. WD 48984.**

Missouri Court of Appeals,
Western District.

April 5, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Sue A. Sperry, Asst. Atty. Gen., Kansas City, for relator.

Zoe K. Holmes, Reggie C. Giffin, Tristan Duncan, Kansas City, and T.K. Thompson, Liberty, for respondent.

Before LOWENSTEIN, P.J., and BERREY and ELLIS, JJ.

ELLIS, Judge.

Jeremiah W. Nixon, Attorney General of the State of Missouri, seeks a Writ of Mandamus or in the alternative, Writ of Prohibition, against the Honorable Ronald M. Belt, Special Judge of the Circuit Court of Clay County, Division Two. Relator's petition was filed on February 1, 1994, and on that date this court granted respondent time to file suggestions in opposition. On February 16, 1994, we entered our Preliminary Order in Prohibition, and directed expedited briefing and oral argument. The court hereby makes permanent its Order in Prohibition.

Pursuant to Chapter 531, RSMo 1986, relator filed an action in *quo warranto* to oust Clay County Presiding Commissioner Peggy Shull from office, alleging she appointed her sister-in-law to public office in violation of the ban against nepotism in art. VII, § 6 of the Missouri Constitution.[1] The case is desig-

---

1. "Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguini-

nated *State of Missouri, ex inf. Jeremiah W. Nixon v. Peggy Shull,* Clay County Cause No. CV 193–1538CC. The respondent judge was assigned to hear the case after recusal of all judges in Clay County. On January 24, 1994, the respondent judge granted relator's Motion for Summary Judgment, finding that Peggy Shull had violated art. VII, § 6 of the Missouri Constitution, and pursuant thereto, on January 31, 1994, entered a formal Order of Judgment in *quo warranto* declaring Peggy Shull a "usurper" in the office of Presiding Commissioner of Clay County, Missouri, and "ousted" her from that office, with all costs of the action taxed against her.

During the time between granting of the Motion for Summary Judgment on January 24, 1994, and entry of the formal Order of Judgment on January 31, 1994, Ms. Shull filed a Motion to Stay Judgment and Order of Ouster and to fix nominal supersedeas bond. After entry of the formal Order on January 31, 1994, but on the same date, the respondent judge set a supersedeas bond in the amount of $5,000. Ms. Shull contends the fixing and posting of the supersedeas bond stays enforcement of the *quo warranto* judgment ousting her from office, pending appeal. It is from the order fixing the supersedeas bond that relator brings this original proceeding seeking a Writ of Mandamus, or in the alternative, Writ of Prohibition.

■ This case presents itself in something of an unusual posture. The challenged order, entered by the respondent judge on January 31, 1994, reads as follows:

> Court considers respondent's motion to fix supersedeas bond and sustains the same. Supersedeas bond set at $5,000. Respondent granted ten (10) days to file supersedeas bond.

It should be noted that the order makes no mention of staying the judgment of ouster.

ty or affinity, shall thereby forfeit his office or employment."

**2.** Art. XIV, § 13 of the Missouri Constitution of 1875 (as amended in 1924) was the forerunner to art. VII, § 6 of the Missouri Constitution of 1945 under which Ms. Shull was ousted. It provided as follows:

> Any public officer or employe of this State or of any political subdivision thereof who shall,

However, counsel for the respondent judge judicially admits in documents filed with this court and in response to specific questions during oral argument that the fixing of the supersedeas bond (and subsequent posting thereof) was intended to stay the entire judgment, including the ouster provision, pending appeal pursuant to Rule 81.09(a). Thus, based on the judicial admission made on behalf of the respondent judge, we are compelled to conclude that the challenged order is intended to permit Ms. Shull to continue in office pending direct appeal of the *quo warranto* judgment.

■ In this proceeding, relator contends a judgment of ouster based on art. VII, § 6 of the Missouri Constitution is not subject to a stay, either by order of the court or by the filing of a supersedeas bond, and the respondent judge has therefore exceeded his jurisdiction in attempting to stay the judgment, or is without jurisdiction to stay the effect of the judgment of ouster. We note first that art. VII, § 6 of the Missouri Constitution is self-enforcing, *State ex inf. Roberts v. Buckley,* 533 S.W.2d 551, 553 (Mo. banc 1976); *State ex inf. McKittrick v. Wymore,* 343 Mo. 98, 109, 119 S.W.2d 941, 947 (banc 1938); *State ex inf. Norman v. Ellis,* 325 Mo. 154, 160–61, 28 S.W.2d 363, 365 (banc 1930), and that *quo warranto* is an appropriate remedy for enforcing a resulting forfeiture. *Dryer v. Klinghammer,* 832 S.W.2d 3, 4 (Mo.App. 1992); *Buckley,* 533 S.W.2d at 553.

The rationale behind a "self-executing" or "self-enforcing" provision of the Missouri Constitution was first enunciated in *State ex inf. Norman v. Ellis,* 325 Mo. 154, 28 S.W.2d 363 (banc 1930). In *Ellis,* it was alleged that the clerk of the circuit court of Stone County had violated art. XIV, § 13 of the Missouri Constitution [2] by appointing his wife as deputy clerk and as a result, forfeited his office.

> by virtue of said office or employment, have the right to name or appoint any person to render service to the State or to any political subdivision thereof, and who shall name or appoint to such service any relative within the fourth degree, either by consanguinity or affinity, shall thereby forfeit his or her office or employment.

In holding that art. XIV, § 13 was self-enforcing, the Court stated:

'It is within the power of those who adopt a constitution to make some of its provisions self-executing, with the object of putting it beyond the power of the legislature to render such provisions nugatory by refusing to pass laws to carry them into effect. . . .

Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. . . .

A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will.'

325 Mo. at 160, 28 S.W.2d at 365 (quoting 12 C.J. *Constitutional Law* § 106 (1917)). After having found that art. XIV, § 13 was self-enforcing, the *Ellis* Court went on to state that a forfeiture occurs "upon the commission of the act condemned," 325 Mo. at 162, 28 S.W.2d at 366, and explained that the Court's constitutional grant of authority to issue writs of habeas corpus, mandamus, *quo warranto,* etc., is the method "provided in the Constitution for removal of an officer who has forfeited his office under section 13. . . ." *Id.*

The courts have therefore recognized that art. VII, § 6 of the Missouri Constitution is self-enforcing and, while the forfeiture occurs upon commission of the act condemned, it may be necessary for the courts to intervene to accomplish the physical ouster resulting from such forfeiture. *See State ex rel. McKittrick v. Wymore,* 343 Mo. 98, 106–07,

119 S.W.2d 941, 943 (banc 1938). This is exactly what occurred in the underlying case. However, the issue before this court is whether a judgment in *quo warranto* formally declaring a forfeiture and ousting the office holder from the position held, can be stayed pending appeal. The answer to this question requires analysis of the nature of an ouster and the purpose of a supersedeas bond.

 Missouri courts have long recognized that there are self-enforcing judgments, as well as self-enforcing constitutional provisions. A self-enforcing judgment requires no affirmative act; rather, it is prohibitory in nature and needs no writ, process or other proceedings to make it operative. *State ex rel. Gray v. Hennings,* 194 Mo.App. 545, 549, 185 S.W. 1153, 1154 (1916). Such judgments cannot be stayed, because "[a] stay of proceedings, from its nature, operates only on orders and judgments commanding some act to be done. . . ." *State ex rel. Anheuser–Busch Brewing Ass'n v. Dillon,* 96 Mo. 56, 61–62, 8 S.W. 781, 783 (banc 1888). Thus an appeal bond operates "as a supersedeas only on the process of execution; it suspends [only] the performance of acts commanded to be done." *Dillon,* 96 Mo. at 61, 8 S.W. at 783; *see also Hennings,* 194 Mo.App. at 549, 185 S.W. at 1154–55; *State ex rel. Jarboe v. Holt,* 444 S.W.2d 857, 859 (Mo. banc 1969).[3] Accordingly, an appeal bond stays only that portion of a self-enforcing judgment relating to payment of costs. *Missouri Pac. Ry. v. R.A. & J. Atkison,* 17 Mo.App. 484, 495–97 (1885).

The key question remaining is whether an order of ouster is a self-enforcing judgment.

---

**3.** Respondent argues that *Holt* stands for the proposition that a prohibitory judgment may be stayed pending appeal. We disagree. *Holt* involved an injunction enjoining the relators therein from "manufacturing, using, selling, distributing, and formulating certain enumerated products," 444 S.W.2d at 858, and an award of money damages. A supersedeas bond was set and posted, and relators continued manufacturing and selling a product covered by the injunction. The plaintiff in the underlying action filed a motion for contempt, and relators responded by contending the supersedeas bond stayed enforcement of the injunction. After characterizing the injunction as "prohibitory" in nature, the Su-

preme Court denied relators' petition for a writ of prohibition, holding that contempt was an appropriate remedy since the filing of the supersedeas bond "did not, of itself, stay the injunction order pending appeal. . . ." *Id.* at 859. On rehearing, the Court determined relators were no longer violating the injunction and had posted an additional bond to cover plaintiff's damages incurred during the period of the violation. The Court then concluded there was no basis for contempt proceedings. The order on rehearing in no way diminished the Court's holding in the main opinion that the injunction was prohibitory and thus not stayed pending appeal. Respondent's reliance on this case is misplaced.

This question has been answered in the affirmative by our Supreme Court. In *State ex rel. Craig v. Woodson,* 128 Mo. 497, 31 S.W. 105 (banc 1895), the Supreme Court was confronted with an election contest issue. There, Enos Craig was certified as having been elected County Clerk of Buchanan County by virtue of the November 8, 1894, election results, which revealed that he won the election by one vote over Robert Nash. Craig assumed office and Nash tested the validity of the election in circuit court, where it was adjudged that Nash was duly and legally elected county clerk. Therefore, the court ousted Craig, and he was ordered to remove himself from office. Craig appealed, and asked the trial court to fix a bond, which was done, and thereafter Craig posted a bond which was accepted by the trial court. In the meantime, Nash moved for an attachment against Craig in the circuit court to enforce its order made in the cause for delivery by Craig to Nash of the office, as well as the books, etc., thereof. Craig then filed for a Writ of Prohibition against the circuit judge and Nash in the Supreme Court of Missouri. Craig contended that by the court fixing the bond and his posting thereof, his ouster from office was stayed pending resolution of his appeal of the election contest judgment.

The Missouri Supreme Court denied the Writ of Prohibition. The Court concluded that the statute authorizing appeal of election contests, and providing for the filing of a limited supersedeas bond,[4] was worded in such a way that it did not encompass a stay of the trial court judgment except as to the payment of costs. However, it also went on to hold that the posting of a supersedeas bond upon conditions as required in regular civil cases would likewise be of no avail. In so doing, it stated:

> Furthermore, when a judgment of ouster is rendered, whatever may be the form of procedure, whether by *quo warranto* or information in that nature, or some special statutory method, the result reached is the amotion of the then tenant of the office, and the party thus ousted is divested of all official authority so long as the judgment remains in force. *Such judgment is self-enforcing.*

128 Mo. at 517–18, 31 S.W. at 108 (citations omitted; emphasis added). The Court subsequently concluded:

> For the reasons aforesaid, we hold that the appeal taken and bond given by relator, after judgment of ouster pronounced against him, did not vacate, supersede or in any manner affect that judgment, and therefore the trial court very properly issued an attachment against him.

128 Mo. at 518–19, 31 S.W. at 108. Thus, *Woodson* is good authority for the proposition that a judgment of ouster from a public office is self-enforcing, and as such cannot be stayed by taking an appeal and giving a supersedeas bond. This conclusion is in accord with the weight of authority from other jurisdictions [5] and the views expressed in the two leading legal encyclopedias.[6]

---

4. Section 4744, RSMo 1889, now § 115.597, RSMo 1986.

5. *See State ex rel. Jones v. Wise,* 200 A. 418 (Del.Super.Ct.1938); *People ex rel. Dibelka v. Reinberg,* 263 Ill. 536, 105 N.E. 715 (1914); *Baker v. Wilson,* 310 Ky. 692, 221 S.W.2d 690 (Ct. App.1949); *People ex rel. Wagenseil v. Stevenson,* 98 Mich. 218, 57 N.W. 115 (1893); *State ex rel. Caldwell v. Wilson,* 121 N.C. 425, 480, 28 S.E. 554 (1897); *State ex rel. Sathre v. Roberts,* 67 N.D. 92, 269 N.W. 913 (1936); *McKee v. Board of Elections,* 173 Tenn. 276, 116 S.W.2d 1033 (1938); *Fawcett v. Superior Court,* 15 Wash. 342, 46 P. 389 (1896). In *Baker, McKee,* and *Fawcett,* the courts held, just as the Missouri Court of Appeals did in *Atkison, supra,* that a supersedeas bond will prevent the issuance of execution for costs. *See also Stevenson,* 57 N.W. at 115 ("The practical result of permitting such a [bond] to

suspend the judgment in *quo warranto* cases would in many cases be to defeat the relator of his remedy wholly. Such a construction is not to be indulged, except it be imperatively required by the terms [of a statute].").

6. In 4 C.J.S. *Appeal and Error* § 413 (1993), it is said:

> A judgment, order, or decree which does not command or permit any act to be done, or is not of a nature to be actively enforced by execution or otherwise, but is self-executing, is not within supersedeas statute or rule, as there is nothing upon which a stay bond can operate in such a case.... An executed portion of a judgment cannot be stayed, and a supersedeas should be denied where its only possible value would be the undoing of something already done.

Here, in the underlying action, Peggy Shull was ousted from the office of Presiding Commissioner of Clay County. She was not commanded to perform any affirmative act by virtue thereof. Rather, she was prohibited from further exercise and occupation of the forfeited office. The writ of *quo warranto* was directed against her right to hold the office, and was issued to protect the public against usurpation. Therefore, it was not subject to being stayed pending appeal, and the order setting the supersedeas bond and her subsequent posting thereof, did not, and could not, operate as a stay of the judgment of ouster.

■ Our conclusion that the judgment of ouster is not stayed does not mean, however, that the respondent judge lacked authority to set the supersedeas bond. To the contrary, he had the right and power to do so. Respondent's Order of Judgment in *quo warranto* entered on January 31, 1994, in addition to ousting Ms. Shull from office, also taxed all costs against her. *See* § 531.050, RSMo 1986 (providing that a successful relator in *quo warranto* "shall recover his costs of such prosecution.") The order to pay costs dictates affirmative conduct and is subject to execution. Therefore, Ms. Shull was entitled to request the setting of a supersedeas, and the posting thereof stayed that part of the judgment requiring payment of costs pending conclusion of her appeal. Rule 81.09(a); *Atkison*, 17 Mo.App. at 497.

■ Counsel for the respondent judge generally contend the adoption of the Missouri Rules of Civil Procedure, in particular Rule 98 dealing with *quo warranto*, effectively overrules the authorities discussed *supra*. Counsel notes that all of those decisions were rendered prior to adoption of the Civil Rules. Respondent's counsel also attempts to distinguish those cases from the present circumstances.

Counsel for the respondent judge forcefully argues that Rule 98.01 dictates disposition of this case. It provides, in pertinent part:

> [P]roceedings in *quo warranto* shall be governed by and conform to the rules of civil procedure and the existing rules of general law upon the subject and the court may, by order, direct the form of such further details of procedures as may be necessary to the orderly course of the action or to give effect to the remedy.

Based on this language, respondent submits that since the Civil Rules govern, the provisions of Rule 81.09(a) apply, permitting setting and posting of a supersedeas bond, and providing for a stay of judgment pending appeal. We disagree.

In adopting the Rules of Civil Procedure, the Supreme Court of Missouri was well aware of existing law, particularly its own decisions. The very language relied on by counsel for the respondent judge reflects awareness of, and requires governance of *quo warranto* proceedings by, "existing rules of general law upon the subject." Adoption of Rule 98.01 in no way changed the applicability of those cases which hold that a judgment of ouster is self-executing and not subject to stay pending appeal. This conclusion is further evidenced by the result in *State ex rel. Jarboe v. Holt, supra*, which was decided in 1969, nine years after promulgation and adoption of the Civil Rules.[7] Moreover, the *Holt* reasoning was subsequently applied in the 1977 case of *Chemical Fireproofing Corp.*

*See also* 74 C.J.S. *Quo Warranto* § 50 (1951). Of similar import, the following appears in 4 Am.Jur.2d *Appeal and Error* § 396 (1962):

A judgment in *quo warranto* proceedings of ouster from a public office divests the person ousted of all authority and fully and completely excludes him from the office as long as it remains in force. It has been held in a number of cases that the efficacy of such a judgment is not suspended by an appeal and the filing of a stay or supersedeas bond, in the absence of a clear statutory provision to that effect.... The supersedeas will, however, prevent the issuance of execution for costs.

*See also* 4 Am.Jur.2d *Appeal and Error* § 368 (1962); 65 Am.Jur.2d *Quo Warranto* §§ 120, 123 (1972).

7. The Supreme Court of Missouri first adopted the Rules of Civil Procedure on August 10, 1959, to become effective April 1, 1960. We are mindful that respondent, as noted previously, argues that *Holt* is supportive of his position based on the Court's action upon rehearing. However, as likewise noted previously, we differ with respondent in this regard, and find *Holt* to be a relatively recent application of the rule that prohibitory judgments are self-enforcing and therefore not subject to stay pending appeal.

*v. Bronska,* 553 S.W.2d 710, 713–14 (Mo.App. 1977). Thus, we conclude respondent's contention is without merit. We likewise find respondent's attempts to distinguish the various cases discussed herein unpersuasive.

 Finally, Respondent insists that there is no basis for us to believe or determine that irreparable harm will be done without issuance of our writ. Having decided that the judgment of ouster was self-executing and not subject to being stayed on appeal, it is, of necessity, clear that Ms. Shull lost her entitlement to office when the judgment was rendered, and therefore any official act or vote by her after that time is a nullity.

"The legal effect of a judgment of ouster against a person in possession of an office is to determine that he is not entitled to the office, and to oust him, at once, so that, while the judgment does not affect the previous official acts of the incumbent, and bears no relation thereto, any subsequent acts as such officer will be invalid." 74 C.J.S. *Quo Warranto* § 50 (1951). *See also Center v. Arp,* 198 Ga. 574, 32 S.E.2d 308 (1944) (judgment of ouster in *quo warranto* proceeding nullifies any attempted official act performed by ousted public official after the judgment); *State ex rel. Pope v. Mansfield Special Rd. Dist.,* 299 Mo. 663, 670, 253 S.W. 714, 716 (1923) ("A modified judgment of ouster therefore attempting to perpetuate [the] powers [of an ousted official] in any respect is a mere nullity").[8]

Thus, if Ms. Shull were to remain in office, as she apparently has under the purported stay, her acts and votes would be invalid, and obviously, great harm would thereby befall Clay County and its citizens. We therefore conclude that it is necessary to make permanent the Order of Prohibition.

For the reasons stated, the Preliminary Order in Prohibition entered on February 16, 1994 is hereby made permanent, and respondent judge is prohibited from enforcing a stay of the judgment of ouster rendered in cause No. CV 193–1538CC. The supersedeas bond set by respondent judge on January 31, 1994 shall remain in effect and shall stay execution on the judgment for costs rendered in said cause.

All concur.

---

**8.** One rationale for this general rule was given in *State ex rel. Dobson v. Meeker,* 19 Neb. 444, 27 N.W. 427, 430 (1886):

> In this connection it is urged with considerable force that if respondent is not permitted to supersede the judgment of the county board, if the judgment of ouster against him should be finally reversed, he would be deprived of his office and the emoluments thereof, without any recourse upon the relator. Whether or not this is true we need not now decide.... But it may also be said that the law of removals from office must have been intended as a somewhat summary method of removing officials who were violating the law; and if the decisions of county boards may be locked up by a supersedeas bond, the short official tenures of county officers in this state would enable a corrupt official to hold the office until the expiration of his term, in defiance of all efforts to remove him for official misdemeanors.