STATE OF MISSOURI on Information of ROY MCKITTRICK, Attorney-General, Relator, v. OTTO WHITTLE.—63 S. W. (2d) 100.

Court en Banc, August 23, 1933.

Roy McKittrick, Attorney-General, and Gilbert Lamb, Assistant Attorney-General, for relator.

706

*R. P. Stone* for respondent.

GANTT, C. J.—Original proceeding in this court. Information in the nature of *quo warranto*. In substance it is alleged that at a lawful meeting of the board of directors of a common school district in Miller County, Logan Stone was by said board employed and contracted with as teacher of the school in said district; that Stone is a first cousin by affinity of respondent Otto Whittle, a director of said district: that he was so employed by said board as the result of respondent Whittle and another director of the district voting in favor of him for the position; that the other director of said district voted against the employment of Stone to teach the school; that respondent Whittle by voting to employ Stone as teacher violated Section 13, Article XIV of the Constitution, and thereby forfeited his office as director of the school district. The case was submitted on respondent Whittle's demurrer to the information.

708

██ It is a matter of common knowledge that at the time of the Constitutional Convention in 1922-1923, and for a long time prior thereto, many officials appointed relatives to positions and thereby placed the names of said relatives upon the public payrolls. The power was abused by individual officials and by members of official boards, bureaus, commissions and committees with whom was lodged the power to appoint persons to official positions. It also was abused by officials with whom was lodged the power to appoint persons to official positions, subject to the approval of courts and other functionaries of the State and its political subdivisions.

It also is a matter of common knowledge that many of the relatives were inefficient and some of them rendered no service to the public. To remedy this widespread evil, the convention proposed to the people an amendment to the Constitution, designated therein Section 13, Article XIV, which follows:

"Any public officer or employee of this State or of any political subdivision thereof who shall, by virtue of said office or employment, have the right to name or appoint any person to render service to the State or to any political subdivision thereof, and who shall name or appoint to such service any relative within the fourth degree, either by consanguinity or affinity, shall thereby forfeit his or her office or employment."

It was adopted by the people on February 26, 1924. The submission and adoption of the amendment conclusively shows that the abuse of said power was state-wide.

██ Even so, respondent contends that said provision of the Constitution is not directed against school directors who participate as such in naming a teacher. He argues that a director is without authority in the matter, citing Section 9209, Revised Statutes 1929, which provides that the board shall have power, at a lawful meeting, to contract with and employ a teacher by order of record.

Of course, there must be a substantial compliance with the statute. Otherwise the teacher is not employed. It follows that as between the district and the teacher, the power to employ is lodged with the board. However, as between the public and a director "the right to name or appoint" a teacher is not determined by reference to the statute. To hold that said "right" is so determined would convict the people of intending to eradicate only a small part of the evil. Furthermore, to so hold would be absurd. Respondent also argues that the amendment is only directed against officials having all the right (power) to appoint. We do not think so. The question must be determined upon a construction of the amendment. It is not so written therein. The amendment is directed against officials who *shall have* (at the time of the selection) "the right to name or appoint" a person to office. Of course, a board acts through its official

members, or a majority thereof. If at the time of the selection a member has the right (power), either by casting a deciding vote or otherwise to name or appoint a person to office, and exercises said right (power) in favor of a relative within the prohibited degree, he violates the amendment. In this case it is admitted that respondent had such power at the time of the selection and that he exercised it by naming and appointing his first cousin to the position of teacher of the school in said district.

Respondent next contends that a school district is not a political subdivision of the State. The authorities are to the contrary. It is defined by a standard text as follows:

"A school district, or a district board of education or of school trustees, or other local school organization, is a subordinate agency, subdivision, or instrumentality of the state, performing the duties of the state in the conduct and maintenance of the public schools." [56 C. J. 193.]

This definition is approved by this court in State ex rel. v. Gordon, 231 Mo. 547, l. c. 574, 133 S. W. 44, in which we said:

"A school district is but the arm and instrumentality of the State for one single and noble purpose, viz., to educate the children of the district—a purpose dignified by solemn recognition in our Constitution (Sec. 1, Art. 11), reading: 'A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the General Assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years.' In obedience to that constitutional mandate, the General Assembly has established such schools and given over to school districts, acting through boards of directors, the single duty and authority to maintain them."

In City of Edina to use v. School District, 305 Mo. 452, l. c. 461, 267 S. W. 112, we also said:

"Under the Constitution of 1875, the public schools have been intrenched as a part of the State Government, and it is thoroughly established that they are an arm of that government and perform a public or governmental function, and not a special corporate or administrative duty. They are purely public corporations, as has always been held of counties in this State."

Respondent directs attention to decisions of this court holding that under Section 12, Article VI of the Constitution a school district is not a political subdivision of the State. In doing so we said:

"The defendant is a drainage district. Is such district such a political subdivision of the State as to give us jurisdiction under the provisions of Section 12, Article 6, of the Constitution? We think not. It is true that we have said that it was a political subdivision of the State. [Morrison v. Morey, 146 Mo. 543.] But, so is a town-

710

ship or a school district. Whilst they are political subdivisions of the State, they are not such as are contemplated by the section of the Constitution, supra, referring to our jurisdiction. . . .

"We are of the opinion that the words, 'other political subdivisions of the State,' as used in Section 12, Article 6, following as they do, the word 'county' mean such political subdivisions as may be created having powers similar to those of a county, and do not refer to townships, school districts, levee districts, drainage districts, and such like minor political subdivisions of the State." [Wilson v. Drainage and Levee District, 237 Mo. 39, l. c. 46, 48, 139 S. W. 136.]

Thus it appears that a school district is a political subdivision of the State within the meaning of Section 13, Article XIV of the Constitution.

Respondent next contends that a school director is not a public officer within the meaning of said section of the Constitution. We have ruled the question as follows:

"A public office is defined to be 'the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' [Mechem, Pub. Offices, 1.] The individual who is invested with the authority and is required to perform the duties is a public officer.

"The courts have undertaken to give definitions in many cases; and while these have been controlled more or less by laws of the particular jurisdictions, and the powers conferred and duties enjoined thereunder, still all agree substantially that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer." [State ex rel. v. Bus, 135 Mo. 325, l. c. 331, 332, 36 S. W. 636.] To the same effect, State ex rel. Zevely v. Hackmann, 300 Mo. 59, l. c. 66, 67, 254 S. W. 53; Hasting v. Jasper County, 314 Mo. 144, l. c. 149, 150, 282 S. W. 700.

Thus it also appears that a school director is a public officer within the meaning of said section of the Constitution.

It follows that respondent Whittle has forfeited his office of school director of said district, and therefore ouster is ordered against him. All concur.