STATE of Missouri ex inf. Thomas J. STE-
PHENS, Jr., Prosecuting Attorney of
Worth County, Missouri, Relator,

v.

Lester FLETCHALL, Judge of the Eastern
District of the County Court, Worth
County, Missouri, Respondent.

No. 51578.

Supreme Court of Missouri,
In Banc.

March 13, 1967.

Thomas J. Stephens, Jr., Grant City, for relator.

Robert Ross, Albany, for respondent.

EAGER, Judge.

This action in quo warranto was instituted in this Court by Thomas J. Stephens, Jr., Prosecuting Attorney of Worth County, against two Judges of the County Court. We thereafter sustained Respondent Dunfee's motion to dismiss as to him, and the proceedings have since been pursued against Lester Fletchall alone. Dunfee had resigned as of February 25, 1966. We shall confine our consideration to those allegations and that evidence which concern the Respondent Fletchall; he assumed the office on January 4, 1965.

The amended information is in two Counts; in the first, it is alleged that on March 22, 1965, a brother of Respondent, one Gordon Fletchall, met with the Court "seeking employment as a bulldozer operator" and that all three Judges "voted affirmatively" to hire him at $1.65 an hour. Further, that in similar manner on April 19, 1965, the Court hired one Kermit Thrasher, a first cousin of Respondent's wife, as a laborer on the "bridge gang" at $1.00 an hour. It is then alleged that such acts of Respondent were in violation of Article 7, § 6 of the Missouri Constitution, V.A.M.S., that being the "nepotism" provision.

In the second count various acts of Respondent are alleged as constituting willful and malicious "oppression, partiality, misconduct or abuse of authority" in viola-

tion of § 558.110 [1] and therefore a cause for forfeiture of office under § 106.220. We shall relate those charges as briefly as possible, omitting those which are not directed at this Respondent, and numbering them according to paragraph numbers appearing in the amended information.

8. That Judges Dunfee and Fletchall "ostracized" the third Judge, Berniel Gabbert, and conducted business at irregular times and places so as to prevent his participation specifying one allegedly irregular meeting at night, which will be referred to later.

9. That Respondent's brother was ordered to build and did build a road on Respondent's farm.

11. That prior to June 2, 1965, Respondent (and Dunfee) voted consistently against the keeping of minutes and accurate records and refused to do so, in violation of Article 6, § 7 of the Constitution, despite motions of Gabbert directed toward the keeping of such records.

12. That Respondent and Dunfee purchased and paid for metal road tubes when a better deal was available.

14–15. That Respondent and Dunfee refused to operate the county-owned bulldozers in roadbuilding work after the filing of this suit, and caused one or more roads to be built on contract at a substantially greater cost; also, that they awarded the contract to a second cousin of Respondent by marriage.

16. That Respondent and Dunfee held meetings more frequently than necessary in order to increase their compensation, contrary to the wishes of the other Judge.

Respondent filed answer. Essentially, he denied all the charges, and alleged certain affirmative matters which we shall consider in connection with the evidence. Respondent filed and the Informant answered certain requests for admissions which will

be considered in the same manner. We appointed the Honorable Walter M. Dinwiddie as our Special Commissioner. After holding a pre-trial conference, he heard the evidence and has filed here a transcript of the proceedings, together with his findings and conclusions of law. He has found the issues on both counts for the Respondent and recommends that both counts be dismissed. The parties have stipulated that the cause be submitted on the transcript and the report of the Special Commissioner, without briefs or oral argument. In considering the evidence, we shall refer to the findings of the Commissioner.

We first consider the nepotism charges. Article 7, § 6 of our Constitution is as follows: "Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment."

There can be no question about the fact that Respondent was a public officer. The question is whether *he* has named or appointed anyone to public employment who is related to him within the prohibited degree. Both Gordon Fletchall and Kermit Thrasher were within that degree of relationship. Hence, did he *name or appoint* them or either of them to public employment? It appears from the evidence, confirmed by the Commissioner's findings, that Gordon Fletchall had worked for the county as a bulldozer operator for several years prior to 1965; he was paid solely by the hour. This work was seasonal, in a sense, in that the work stopped during the winter months, usually being resumed in March. The charge now is that he was employed on March 22, 1965, by the affirmative vote of all three members of the Court. Gordon testified that before he went back to work in 1965, he talked to Judge Gabbert only; the Respondent testi-

---

1. All statutory references are to RSMo 1959, and V.A.M.S.

fied that he did not vote to hire his brother; there is no record in the transcript showing anything on the subject. Judge Gabbert testified on cross-examination that he "guessed" that Respondent had never voted officially to hire Gordon but that the business at that time was not conducted in any such formal manner. The Commissioner found that it did not appear from the evidence "when or how he was chosen" or that Respondent connived to have him employed, but that he was paid by the consent of all three Judges after he was recalled. We find that the Informant has failed to prove any violation by the Respondent on this charge; he has failed to show that any action of Respondent was instrumental in putting his brother to work. State ex rel. McKittrick v. Becker, Banc, 336 Mo. 815, 81 S.W.2d 948; State ex inf. McKittrick v. Whittle, 333 Mo. 705, 63 S.W.2d 100, 88 A.L.R. 1099. Moreover, we doubt seriously that the recall of a long-time hourly worker, after the usual winter layoff, would constitute an "employment" within the meaning of the constitutional provision. See, by way of analogy, ACF Industries v. Industrial Commission, Banc, Mo., 320 S.W.2d 484, 491.

■ Kermit Thrasher was called to work in April, 1965; Judge Gabbert testified that a laborer on the bridge crew had quit, leaving only the foreman, and that "one of us called him." Thrasher had also done seasonal work for the county for years, and he testified that "somebody just called me up" and that he started work at about the usual time of the year. Again, no record is shown; Respondent denied that he had voted to employ Thrasher, and he was not contradicted. Later Thrasher was put on a different job with a raise of twenty-five cents an hour; the record of that date shows that Respondent voted against the raise. No impropriety has been established on this charge; the Commissioner agrees. We find for the Respondent on Count 1.

■ Respondent's counsel objected throughout the hearing to the admission of oral testimony of actions by the Court or any of its members, asserting that this was wholly irrelevant because the Court could speak only through its records. All such evidence was received subject to objection, and the Commissioner later ruled it properly admitted. The principle asserted is true, but we may look beyond the records where improper and illegal acts are charged against an official of that very body, when such acts would not normally be shown by the records. We consider all the evidence, as the Commissioner did.

We next consider Count 2. Section 558.-110 is as follows: "Every person exercising or holding any office of public trust who shall be guilty of willful and malicious oppression, partiality, misconduct or abuse of authority in his official capacity or under color of his office, shall, on conviction, be deemed guilty of a misdemeanor."

Section 106.220 is as follows: "Any person elected or appointed to any county, city, town or township office in this state, except such officers as may be subject to removal by impeachment, who shall fail personally to devote his time to the performance of the duties of such office, or who shall be guilty of any willful or fraudulent violation or neglect of any official duty, or who shall knowingly or willfully fail or refuse to do or perform any official act or duty which by law it is his duty to do or perform with respect to the execution or enforcement of the criminal laws of the state, shall thereby forfeit his office, and may be removed therefrom in the manner provided in sections 106.230 to 106.290."

■ 8. We find no evidence to support the charge that Judge Gabbert was "ostracized" or that Respondent and Judge Dunfee conducted the Court's business at such irregular times and places as to exclude his participation. The Informant offered in evidence as exhibits copies of the record of 22 court sessions. These show that Judge Gabbert attended 21 of these meetings. A record of July 2, 1965, shows that Gabbert was paid at that time for attending 13

meetings, Dunfee for 13, and Fletchall for 14. One occasion has been specifically charged, a so-called meeting occurring on the evening of June 23, 1965, that being the day on which this suit was filed. It is charged that Gabbert was not "notified" of the meeting, at which "county business" was conducted. The evidence showed that on this evening Gabbert came to Respondent's home and they talked; apparently he left, and Respondent went to Dunfee's residence and talked further. All were rather perplexed and concerned, as might be imagined. It does not appear that Gabbert was excluded. Respondent and Dunfee told the bridge foreman and Gordon Fletchall to quit work until they could find out what was going on. The bridge work was already shut down for lack of lumber. Gordon never did return to work; the others did very shortly thereafter. There was no evidence that anyone was discharged. This charge has not been sustained.

■ 9. Respondent had his brother "round off" a corner on a dirt road at the edge of Respondent's place, using the bulldozer, so as to relocate it on better ground. The new construction was very short. Respondent got no benefit personally; in fact, this separated a small tract from the rest of his place. The road was shown to be a public road and a mail route. The action should not have been taken so informally, but it constituted no such misconduct as is contemplated by the statute.

■ 11. The records of the meetings of the Court were incomplete; often they merely showed that the Court met, what members were present, and that the "Court transacted business at office." Occasionally special items were listed, and the county bills appear to have been itemized and listed when allowed. We do not have the complete record for 1965, but on April 30, fifty-three bills were allowed as "per Warrant Register." The records were signed by the Presiding Judge and the County Clerk. Judge Gabbert testified that he had asked that the Court "keep minutes" and records, but that "they just felt" that it was not necessary. Apparently this rather nebulous way of keeping the records was a carry over from previous years. It was concededly corrected on or about June 2, 1965. It is true that a County Court is required to keep "an accurate record of its proceedings," Article 6, § 7, Constitution, but we find nothing in Respondent's demonstrated actions to constitute willful and malicious oppression, misconduct or abuse of office, as charged. He may have been guilty of simple negligence or of a want of the requisite procedural knowledge, but that does not justify an ouster.

■ 12. The county needed certain metal "road tubes." It received two bids, said to be at the same price. Judge Gabbert testified that in February, 1965, the Court accepted one of the bids on which the salesman had stated that payment might be delayed until December; but further, that at some unspecified date Respondent and Dunfee approved payment in full prior to December, and in Gabbert's absence. On the evidence before us we cannot rule that any such action was beyond the discretion of the Court, acting through a majority. There may have been a valid reason, arising entirely outside this evidence.

■ 14–15. Apparently the County Court was allotted certain funds to be expended toward the building of CART roads,—a term not explained in our record. Seemingly, these are a type of minimum grade county roads, which may be built by the county direct or through contract. On certain of these, the question arose as to the method which should be used; Respondent and Dunfee voted to build the roads by contract; Gabbert voted against this. Bids were then received from two contractors, and two members of the Court voted to let the contracts, separately or in toto, in a manner not fully disclosed in this record. It is charged that the county was put to added expense in building the roads by contract, but nothing is shown in the evidence other than the exercise of a lawful

discretion by a majority of the Court. The same is true of a charge that since the filing of this suit a majority of the Court has failed to operate the two bulldozers owned by the County, and has ceased all direct road building operations.

 16. The charge of the holding of an excessive number of meetings is not sustained by the record. The Commissioner found that no evidence was offered on that charge and we find none.

 As we have indicated, the burden of proof on all charges was on the Informant. State ex inf. Connett v. Madget, Banc, Mo., 297 S.W.2d 416. Since forfeitures are not favored, and the ouster of a public officer is a drastic remedy, the statutory provisions for removal are strictly construed. Madget, supra; State ex inf. Taylor v. Cumpton, 362 Mo. 199, 240 S.W. 2d 877. The two offenses (out of eight) for which ouster was ordered in Madget consisted of willful and deliberate acts of oppression and coercion designed to benefit the respondents personally and financially, and to benefit financially the political supporter of one of them. That opinion, when read in its entirety, constitutes authority for a ruling that the evidence here under Count 2 of the amended information is not sufficient to justify ouster, and we so hold.

In so far as Count 1 is concerned, we find, as already indicated, that it has not been shown that Respondent was responsible for the employment of either of his relatives, or that he connived with one or more others in their employment. State ex rel. McKittrick v. Becker, Banc, 336 Mo. 815, 81 S.W.2d 948; State ex inf. McKittrick v. Whittle, 333 Mo. 705, 63 S.W.2d 100, 88 A.L.R. 1099.

Neither count of the amended information has been sustained and ouster is denied. The amended information is dismissed. Costs are hereby taxed against the Informant.

All concur.