**CONSOLIDATED SCHOOL DISTRICT NO. I OF JACKSON COUNTY, Missouri, a public corporation, Plaintiff-Respondent,**

v.

**Christopher S. BOND, State Auditor of Missouri, Defendant-Appellant.**

**No. KCD 26186.**

Missouri Court of Appeals, Kansas City District.

Sept. 4, 1973.

Motion for Rehearing and/or Transfer Denied Oct. 1, 1973.

Application to Transfer Denied Nov. 12, 1973.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

Kuraner, Dingman, Brockus, Kinton & Lowe, Harry D. Dingman, Kansas City, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

This suit for a declaratory judgment presents the issue of whether the plaintiff,

a six-director school district, is subject to mandatory audit by the defendant State Auditor upon the petition of a dissident minority of the voters, under the provisions of statutory § 29.230, subd. 2.[1] The trial court ruled that plaintiff was not so subject, on the ground that this statute does not apply to school districts. The defendant appeals.

§ 29.230, subd. 2, here in question, provides as follows:

"The state auditor shall audit any *political subdivision* of the state, including counties having a county auditor, if requested to do so by a petition signed by 5 per cent of the qualified voters of the political subdivision determined on the basis of the votes cast for the office of governor in the last election held prior to the filing of the petition. The political subdivision shall pay the actual cost of the audit. No political subdivision shall be audited by petition more than once in any one calendar or fiscal year." (emphasis supplied)

The pleadings originally posed a factual issue as to whether the petitions filed with the State Auditor had been signed by 5% of the qualified voters of plaintiff school district. However, this question was eliminated by stipulation of the parties at trial that the sole issue is the legal one "of whether or not the plaintiff comes within the terms of Section 29.230, subd. 2." The only question for decision left therefore is the meaning to be given the phrase "political subdivision", as used in this statute, and specifically whether that term includes a school district.

There is a very substantial body of law holding that a school district does constitute a political suydivision of the state. This was specifically so held in State ex inf. McKittrick v. Whittle, 333 Mo. 705, 63 S.W.2d 100 (banc 1933) where the court ruled that a school district is a political subdivision for the purposes of the constitutional ban on nepotism. In this respect the court held as follows:

"Respondent next contends that a school district is not a political subdivision of the state. The authorities are to the contrary. It is defined by a standard text as follows: 'A school district, or a district board of education or of school trustees, or other local school organization, is a subordinate agency, subdivision, or instrumentality of the state, performing the duties of the state in the conduct and maintenance of the public schools.' 56 C.J. 193.

"This definition is approved by this court in State ex rel. Carrollton School Dist. v. Gordon, 231 Mo. 547, loc. cit. 574, 133 S.W. 44, 51, * * *

"In the City of Edina to use v. School District, 305 Mo. 452, loc. cit. 461, 267 S.W. 112, 115, 36 A.L.R. 1532, we also said: 'Under the Constitution of 1875, the public schools have been intrenched as a part of the state government, and it is thoroughly established that they are an arm of that government and perform a public or governmental function, and not a special corporate or administrative duty. They are purely public corporations, as has always been held of counties in this state.' "

So also in Smith v. Consol. School Dist. No. 2, 408 S.W.2d 50 (Mo., banc 1966) the court held that school districts are not liable in tort inasmuch as they are political subdivisions and therefore are entitled to the benefit of sovereign immunity. The same underlying concept was accepted and applied in School Dist. of Kansas City v. Kansas City, 382 S.W.2d 688 (Mo., banc 1964), where the court held that a school district is a political subdivision for the purpose of authority to enter into cooperative governmental agreements. In this respect, the court held at page 697 of the opinion.

1. All statutory references are to RSMo 1969, V.A.M.S. All constitutional references are to Missouri Constitution, 1945, V.A.M.S.

"The School District is a political subdivision devoted to public education * * *"

These Missouri decisions are in accord with the court decisions generally in other jurisdictions. 78 C.J.S. Schools and School Districts § 24, p. 656; 68 Am.Jur.2d Schools, § 14, p. 371.

A prominent exception to the rule that school districts are to be regarded as political subdivisions has grown up in Missouri in one situation, namely, for the purpose of constitutional construction under Article V, § 3, defining jurisdiction of the Missouri Supreme Court. For that purpose, and that purpose alone, the courts of this State have held that school districts do not constitute political subdivisions. School Dist. No. 1 v. Boyle, 182 Mo. 347, 81 S.W. 409 (1904); School Dist. v. Burris, 84 Mo.App. 654; State ex rel. School Dist. of Sedalia v. Harter, 188 Mo. 516, 87 S.W. 941, 943 (1905); Wilson v. King's Lake Drainage & Levee Dist., 237 Mo. 39, 139 S.W. 136 (1911); State ex rel. School Dist. No. 4 v. School Dist. No. 3, 238 Mo. 407, 141 S. W. 1111 (1911); State ex rel. Consol. School Dist. No. 2 v. Ingram, 317 Mo. 1141, 1143, 298 S.W. 37 (1927); State ex rel. Cravens to Use of Consol. School Dist. No. 2 v. Thompson, 322 Mo. 444, 450, 17 S.W. 2d 342 (1929); Consol. School Dist. No. 2 v. Gower Bank, 53 S.W.2d 280 (Mo.1932); State ex rel. Kugler v. Tallatson, 300 S. W.2d 517 (Mo.1957); State ex rel. Miller v. Bd. of Education of Consol. School Dist. No. 1, 18 S.W.2d 26 (Mo.1929); Normandy Consol. Sch. Dist. v. Wellston Sewer Dist., 74 S.W.2d 621 (Mo.1934); Hydesburg Common School Dist. v. Rensselaer Common Sch. Dist., 214 S.W.2d 4 (Mo. 1948); Young v. Brassfield, 223 S.W.2d 491 (Mo.1949); State ex rel. Fredericktown Sch. Dist. No. 20 v. Underwood Sch. Dist. No. 16, 250 S.W.2d 843 (Mo.App. 1952); Koch v. Bd. of Regents of N. W. Mo. State College, 256 S.W.2d 785 (Mo. 1953); State ex rel. Dahm v. Goodin, 295 S.W.2d 600 (Mo.App.1956); State ex rel. McCain v. Acom, 236 S.W.2d 749 (Mo.

App.1951); Jr. College Dist. of Met. K. C. v. Mayse, 433 S.W.2d 541 (Mo.1968).

Plaintiff school district places substantial reliance upon this line of cases and seeks to have § 29.230, subd. 2 construed just as Art. V, § 3 has been, to exclude school districts. This effort cannot be crowned with success. The exceptional result which has been reached under Art. V, § 3 came into acceptance by reason of historical accident. The Bar and Bench of this State had for many years after the constitutional amendment of 1884 assumed that the courts of appeal had jurisdiction of cases involving school districts as a party, and many cases of that sort had been decided by the courts of appeal without objection or any special consideration of the jurisdictional problem. It was not until 1900 that the issue was finally reached in School District v. Burris, 84 Mo.App. 654, l.c. 662 (1900). The court in that case pointed out that the courts of appeal had uniformly exercised superintending control over the inferior courts in respect to cases when one of the parties was a school district, and the court refused to tamper with that already settled practice. When the issue thereafter finally reached the Supreme Court in School Dist. v. Boyle, 182 Mo. 347, 81 S.W. 409 (1904), that court was also strongly impressed with the settled state which the law on this subject had already acquired and it was unwilling to even consider on the merits any change in that construction. In this respect the Supreme Court remarked that "as so much has been judicially done on the faith of that assumption, we shall, on this motion, without stopping to discuss the question as if it were an original proposition in this court, content ourselves with so holding in conformity with the ruling in School Dist. v. Burris, supra * * *."

The result in this line of cases was considered, rationalized, and narrowly confined in State ex inf. McKittrick v. Whittle, 333 Mo. 705, 63 S.W.2d 100 (banc 1933). The rationale offered by the Whittle decision, in distinguishing the cases involving Supreme Court jurisdiction from

all other cases on the subject of whether a school district constitutes a political subdivision, was the peculiar language of the constitutional provision (now Art. V, § 3) where the words "other political subdivisions of the state" immediately follow the word "county," from which the court inferred that for the purpose of this constitutional provision the political subdivisions covered had to have powers similar to those of a county.

The wording of § 29.230, subd. 2 is not the same as that of Art. V, § 3 so as to come within the Whittle rationale. Neither are the courts in construing § 29.230, subd. 2 hampered by previous practice, as was true when the constitutional provision first came up for judicial construction. To the contrary, the administrative construction of this statute since at least 1955 has been that the phrase "political subdivision" *does include school districts.* Opinion of the Attorney General No. 74, Reeves, May 31, 1955. Therefore, no reason exists why the exceptional rule of construction under Art. V, § 3, should be used and applied in the construction of § 29.230, subd. 2.

With the single exception of the situation under Art. V, § 3 (which as indicated is inapplicable here), the term "political subdivision" has acquired in this State and elsewhere a settled meaning and technical legal significance of including school districts. It must be assumed that the legislature in adopting § 29.230, subd. 2 used the term "political subdivision" in that settled sense. § 1.090; State v. Brady, 472 S.W. 2d 356, 358 (Mo.1971).

■ The trial court, however, reached the conclusion that this statutory section was not intended to cover school districts, relying for this purpose on the language of predecessor statutory sections and upon certain other current statutes which were treated by the trial court as being related to § 29.230, subd. 2. This recourse to extraneous materials is not permissible. The established rule of statutory construction is that the legislative intention must be ascer-

the legislative intention must be ascertained if possible from the words used in the statute. State ex rel. Highway Comm. v. Wiggins, 454 S.W.2d 899, 903 (Mo., banc 1970). Here the statute can be construed from the words used. There is no ambiguity and therefore no room for the use of extrinsic aids to construction. Annbar Assoc. v. Westside Redevelopment Corp., 397 S.W.2d 635, 654 (Mo., banc 1965); City of St. Louis v. Crowe, 376 S. W.2d 185, 190 (Mo.1964). As stated in the Crowe case:

> "We have no right to read into the statute an intent which is contrary to the legislative intent made evident by the phraseology employed."

Nevertheless, even if statutory history and other statutes were to be considered, the result would not differ. As to the matter of statutory history, the trial court relied on the fact that earlier statutes had specified the precise officers and agencies which were subject to audit by the State Auditor, and that these lists did not include school districts (although it may be noted in passing that these prior sections did include "county superintendents of schools"). This history is without significance. The fact is that the legislature radically revised the statute in 1945, and in the Laws of 1945, p. 584 provided for the first time that the State Auditor was to audit "any political subdivision of the state whenever requested to do so by five percent of the qualified voters of such political subdivision". That provision inserted in the statute in 1945 was intended to accomplish something and to make some change in what had previously been the law. It cannot successfully be argued that the law as changed in 1945 should be interpreted to mean nothing more or different from what it had been theretofore.

With respect to the matter of "related statutes" the trial court made reference to and relied upon §§ 26.060 and 165.121. The first of those sections provides that the Governor may, if in his judgment nec-

essary in the public interest, select auditors to audit the accounts of "any subdivision" and "also road districts, school districts, townships, municipalities and counties receiving for or from the state any money". Concerning this statute, the trial court reasoned that the legislature had drawn a distinction between "subdivision of the state" and school districts. The argument proves too much, since if that be true then counties also would cease to be "subdivisions of the state". In any event, whatever the intention was with respect to § 26.060, it does not provide any useful tool for a construction of § 29.230.

■ As for § 165.121, the trial court reasoned that this section calling for an independent biennial audit of six-director school districts, constitutes an exclusive provision for the making of audits of these entities. The trial court's opinion was that this section is special legislation which has precedence over and displaces § 29.230 which is a general statute on the same subject. The principle of law invoked does not, however, have any application here. The rule in question is that a general statute and a special statute on the same subject must both be harmonized if at all possible, and it is only in case of repugnancy that the general statute will be considered superseded. State ex rel. Chic. R. I. & Pac. R. R. Co. v. Pub. Serv. Com., 441 S.W.2d 742 (Mo.App.1969); City of Kirkwood v. Allen, 399 S.W.2d 30 (Mo., banc 1966); State ex rel. City of Springfield v. Smith, 344 Mo. 150, 125 S.W.2d 883 (banc 1939); 82 C.J.S. Statutes § 369, p. 839. There is no repugnancy between § 29.230 and § 165.121. Audits must be made in any event at least biennially under § 165.121. If no objection is made by at least 5% of the voters then that is the end of the matter. On the other hand, if at least 5% of the voters in a school district are not satisfied with the audit made by the accountant selected by the school board, then the dissident minority has the right to demand a second audit by the state auditor. We find

no difficulty in harmonizing these two statutory sections.

■ The plaintiff school district in its brief has called attention to additional constitutional and statutory provisions which it deems relevant. At least two of these additional provisions are more hurtful to its cause than helpful. The first of these, Art. X, § 15 of the Constitution, contains a definition of the term "other political subdivisions" for the purpose of taxation and includes school districts within that definition. This tends to reflect concurrence by the constitutional framers in the generally accepted concept that school districts should be considered as "political subdivisions". Similarly, Art. VI, § 16 of the Constitution provides for cooperation between municipalities and political subdivisions; and this constitutional provision had been implemented by § 70.210 which defines the term "political subdivisions" to include school districts. This statute tends to reflect a legislative concurrence also in the general understanding of the term "political subdivision" as including a school district.

Another pair of statutory sections cited by plaintiff school district appeared to be indifferent and of no help either way on the present question. The first of these additional provisions is § 67.750 which deals with recreational systems of political subdivisions and contains a definition of "political subdivisions" which does not include school districts. Here the legislature has merely exercised its privilege of defining a term in a special way for an unusual, particular purpose. The other of these indifferent sections is § 105.140 which requires towns, cities and county officers to report to the state auditor certain statistical information concerning dramshops and other matters. These matters pertain to subjects as to which school districts have no activity and on which they would have no information. The omission of school districts from this section signifies nothing.

The remaining two statutory provisions called to attention by the plaintiff school district do have some greater relevancy in its favor. The first of these is § 105.145 which calls upon governing bodies of political subdivisions to make annual reports to the state auditor, but which specifically excludes school districts from the definition for this purpose. § 67.090 deals with the preparation and approval of budget forms and provides that these forms shall be prepared by the State Commissioner of Education for school districts, whereas the State Auditor is to do so for all other political subdivisions. While speculations might be made as to the reason for the distinctions made under these two statutory provisions, conjecture along this line is fruitless since there is no necessary correlation between these two sections and § 29.230. Furthermore, the express distinction made by the legislature in § 105.145 and § 67.090 is not persuasive of a similar implied distinction under § 29.230. If the legislature intended a distinction between school districts and other political subdivisions under § 29.230, presumably it would have expressly so provided just as it did in sections 105.145 and 67.090.

Finally, the school district argues that there is no need to construe § 29.230 as including school districts, since if any question arises as to the propriety of the regular biennial audits, a safeguard is provided by § 26.060 under which the Governor may designate new auditors. Even though § 26.060 may serve a purpose of protecting the general public in this regard, that section is not inconsistent with nor does it substitute for § 29.230, subd. 2. The legislative purpose in the latter section is to grant a minority of the voters in the school district an independent right to demand and obtain an audit which can serve to probe the activities and transactions of the school board without having to ask leave or permission from anyone. This right to demand a fresh audit on petition of 5% of the voters is a separate and different right from that which is given to the Governor, to be exercised in his discretion, under § 26.060.

The term "political subdivision" as used in § 29.230, subd. 2 does include school districts. A petition having been filed by 5% of the voters of plaintiff school district under the provisions of this section, the state auditor has the right and the duty to conduct an audit as requested.

The judgment is reversed.

All concur.