STATE ex inf. Hugh C. ROBERTS, Jr., Prosecuting Attorney of St. Francois County, Relator,

v.

Kenneth BUCKLEY, Sheriff of St. Francois County, Respondent.

No. 59169.

Supreme Court of Missouri, En Banc.

Feb. 9, 1976.

Rehearing Denied March 8, 1976.

Hugh C. Roberts, Jr., pro se.

John A. Schneider, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Hillsboro, for respondent.

FINCH, Judge.

This is an original proceeding in quo warranto wherein the prosecuting attorney of St. Francois County seeks ouster of respondent from the office of sheriff of that county. The information filed alleges forfeiture of office by reason of the appointment of a relative within the fourth degree in violation of Art. VII, § 6, Mo.Const.[1] We order ouster.

---

1. The complete text of Art. VII, § 6, Mo. Const. is as follows:

"Any public officer or employee in this state who by virtue of his office or em-

The facts are not in dispute. Respondent Buckley was elected sheriff of St. Francois County in November 1972 and assumed that office on January 1, 1973. Acting pursuant to § 57.250,[2] respondent appointed one Fred Fisher as a deputy sheriff (process server), which appointment was approved on January 15, 1973, by the Honorable J. O. Swink, the judge of the circuit court. Fisher then took the oath of office and thereafter served in that capacity until he resigned on July 16, 1975. Fisher was a brother of the late Louis Fisher, father of Peggy Lou Buckley, the wife of respondent sheriff. Hence, he is the uncle of Mrs. Buckley and is the uncle of respondent by marriage (by affinity).

At the outset, we note that Art. VII, § 6, Mo.Const., has been held to be self-enforcing. *State ex inf. McKittrick v. Wymore,* 343 Mo. 98, 119 S.W.2d 941 (1938); *State ex inf. Norman v. Ellis,* 325 Mo. 154, 28 S.W.2d 363 (1930). Quo warranto is an appropriate remedy for enforcing a resulting forfeiture. *State ex inf. Danforth v. Orton,* 465 S.W.2d 618 (Mo. banc 1971); *State ex inf. McKittrick v. Wymore, supra.* Respondent advances three reasons why he has not violated Art. VII, § 6, and why he should not be ousted in this quo warranto proceeding.

First, respondent argues that this court does not have jurisdiction over this proceeding for the reason that an adequate remedy at law exists. He points to §§ 106.-220 through 106.290 which provide a method of removal by proceedings in the circuit court and contends that such procedure should be followed. This same contention was raised in *State ex inf. McKittrick v. Wymore, supra,* and later in *State ex inf. Danforth v. Orton, supra,* and in both cases the proposition was ruled adversely to respondent's position. We adhere to those holdings.

In connection with his contention that this proceeding in quo warranto is inappropriate, respondent also calls attention to Rule 84.22[3] which provides that "no original remedial writ, except habeas corpus, will be issued by an appellate court in any case wherein adequate relief can be afforded by an appeal or by application for such writ to a lower court." It is true that this court could have declined to issue the writ on the basis of Rule 84.22. In most instances where an extraordinary writ is sought, this court does decline to consider the application if not previously made to a lower court in accordance with Rule 84.22. However, the rule may be waived and in this case that was done when the court permitted filing of the information and ordered summons to issue. The rule is procedural and does not go to the court's jurisdiction.

Respondent's second proposition is two-pronged. He says that Art. VII, § 6 is

---

ployment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment."

**2.** The complete text of § 57.250 is as follows:

"The sheriff in counties of the third and fourth classes shall be entitled to such number of deputies and assistants, to be appointed by such official, with the approval of the judge of the circuit court, as such judge shall deem necessary for the prompt and proper discharge of his duties relative to the enforcement of the criminal law of this state. The judge of the circuit court, in his order permitting the sheriff to appoint deputies or assistants, shall fix the compensation of such deputies or assistants. The circuit judge shall annually, and oftener if necessary, review his order fixing the number and compensation of the deputies and assistants and in setting such number and compensation shall have due regard for the financial condition of the county. Each such order shall be entered of record and a certified copy thereof shall be filed in the office of the county clerk. The sheriff may at any time discharge any deputy or assistant and may regulate the time of his or her employment. (L. 1945 p. 1547 § 2; L. 1945 p. 1562 § 2; L. 1949 H.B. No. 2015)"

All statutory references are to RSMo 1969 unless otherwise indicated.

**3.** All references to rules are to Supreme Court Rules, V.A.M.R.

inapplicable because (a) he "did not name or appoint Fred Fisher 'by virtue of his office or employment' " and (b) Fisher is not "any relative within the fourth degree, by consanguinity or affinity" and, hence, his appointment did not violate the constitutional provision.

The assertion that respondent did not name or appoint Fred Fisher is based on the theory that § 57.250 limits the control the sheriff has over appointment of his deputies in that approval by the circuit judge is required. He argues that the constitutional provision applies only when the one naming or appointing has absolute and uncontrolled discretion in making the designation. He argues that this does not exist where, as here, the appointment was subject to approval by the circuit judge. We disagree. Sec. 57.250 states that the appointment is to be made by the sheriff and that is what occurred. The fact that the circuit judge had to approve the selection made does not prevent the appointment from falling within the prohibition of Art. VII, § 6. This is demonstrated by this court's decision in State ex inf. McKittrick v. Whittle, 333 Mo. 705, 63 S.W.2d 100 (1933). In that case a first cousin by affinity of a school board director was named or appointed as a teacher for that district. The board member, who was a cousin of the teacher, plus another board member, voted for the appointment. The third member voted against such employment. In ruling that the board member had forfeited his office under such circumstances, the court said:

" * * * Respondent also argues that the amendment is only directed against officials having all the right (power) to appoint. We do not think so. The question must be determined upon a construction of the amendment. It is not so written therein. The amendment is directed against officials who shall have (at the time of the selection) 'the right to name or appoint' a person to office. Of course, a board acts through its official members, or a majority thereof. If at the time of the selection a member has the right (power), either by casting a deciding vote or otherwise, to name or appoint a person to office, and exercises said right (power) in favor of a relative within the prohibited degree, he violates the amendment. In this case it is admitted that respondent had such power at the time of the selection, and that he exercised it by naming and appointing his first cousin to the position of teacher of the school in said district." 63 S.W.2d at 101, 102.

■ Nor do we find any merit in the contention that Fisher was not related to respondent within the fourth degree. He was not related by blood (consanguinity) but he was related by marriage (affinity). As this court noted in State ex inf. Norman v. Ellis, supra, 325 Mo. 154, 28 S.W.2d at 366:

"Affinity is defined as a legal relationship which arises as the result of marriage ' * * * between each spouse and the consanguinal relatives of the other.'

"That is, the husband is related by affinity to his wife's relatives in the same way that she is related to them by blood, and she is related to his relatives by affinity in the same way that he is related to them by blood."

Such relationship is within the fourth degree. Respondent was related to Fisher in the third degree under the civil law method of computing such relationships, this being the method applied in earlier Missouri cases.[4] This conclusion is in harmony with

4. The method of computing such relationship under the civil law method and the canon law method is explained in State v. Thomas, 351 Mo. 804, 174 S.W.2d 337, 340 (1943):
"There are two methods of reckoning degrees of consanguinity: The canon law, and the civil law. Under the canon law the number of generations is counted from the common ancestor down to the fartherest of the two descendants whose degree of relationship is to be ascertained. Under the civil law the count ascends by generations from either of the two rela-

the conclusion in *State ex inf. McKittrick v. Whittle, supra,* that persons who were first cousins by affinity were related within the fourth degree.

██ Finally, respondent asserts that Art. VII, § 6, Mo.Const. is unconstitutional under the due process clause of the fifth amendment to the U. S. Constitution (as applied to the states by the fourteenth amendment) and under the equal protection clause of the fourteenth amendment thereto. These contentions are based on the premise that Art. VII, § 6, is not sufficiently definite to provide him with notice that his actions with respect to designating Fred Fisher as a deputy sheriff would violate that provision of the Missouri Constitution. We overrule these contentions. Art. VII, § 6, is short, clear and specific. If any public officer or employee, acting by virtue of the authority of his position, names or appoints to public office or to public employment any relative within the fourth degree, whether by blood or by marriage, he forfeits his office. There have been numerous cases construing this constitutional provision. If respondent was at all in doubt, which he should not have been, he could have sought an opinion from the attorney general.

We hold that respondent appointed Fred Fisher, his uncle by affinity, as deputy sheriff (process server) for St. Francois County and that he thereby violated Art. VII, § 6, Mo.Const. Accordingly, he has forfeited his office of sheriff of St. Francois County. He is now usurping such office and his ouster must go as a matter of course.

It is ordered that respondent is ousted from the office of sheriff of St. Francois County until the end of his present term expiring December 31, 1976, and the costs of this proceeding are taxed against him.

All concur.

tives to the common ancestor and thence down the collateral line to the other. The reckoning by the civil law would be just double that under the canon law, as applied to relatives removed an equal number of generations from the common ancestor. Thus, brothers would be related in the 1st degree under the canon law, and in the 2nd degree under the civil law; first cousins similarly in the 2nd and 4th degrees; second cousins in the 3rd and 6th degrees, etc. But the child of one of two first cousins (as here) would be related to the other cousin in the 3rd or 5th degree, respectively, because one generation further removed from the common ancestor."