STATE of Missouri ex rel. DRESSER INDUSTRIES, INC., Relator,

v.

Honorable James RUDDY, Judge of the Circuit Court of the County of St. Louis, Respondent.

No. 60698.

Supreme Court of Missouri, En Banc.

Jan. 15, 1980.

Rehearing Denied Feb. 11, 1980.

Alan C. Kohn, Mark J. Bremer, St. Louis, for relator.

John Ashcroft, Atty. Gen., Robert M. Lindholm, Danny Ray Summers, Asst. Attys. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Upon application of respondent, the Honorable James Ruddy, we ordered this proceeding in prohibition transferred after the St. Louis District of the Court of Appeals had made absolute its writ which directed Judge Ruddy of the Circuit Court of the County of St. Louis to dismiss an underlying action against Dresser Industries, Inc., relator herein, because "venue" of the same did not lie in said county.

Dresser is a Delaware corporation with its principal place of business within the United States being in the state of Texas. It is registered also in Missouri and does business within this state. An office allegedly is maintained in St. Louis County, and there is a statutorily required "registered agent" in the city of St. Louis. From the record presented, it is not clear as to where Dresser's principal place of business in Missouri is located, but it is undisputed that it is not in the city of St. Louis or St. Louis County. It is agreed, however, that Dresser employs approximately 480 persons in its refractory in Audrain County, 400 persons in its refractory in Callaway County and 67 persons in its barite mining operation in Washington County.

In connection with the latter, a settling basin with holding ponds collected the "waste" from that particular operation. It is agreed that on August 15, 1975, the "dam" of the settling basin did rupture;

and, the underlying action is predicated upon allegations that the pollution thus created flowed into Buss Branch, thence into Mill Creek, thence into Big River and finally into the Meramec River and that said "polluted condition" continued to plague the named waterways for some 200 days.

On July 29, 1976, the State of Missouri, at the relation of the Attorney General, the Missouri Clean Water Commission, the Missouri Department of Natural Resources and the Missouri Conservation Commission filed the petition, now challenged, against Dresser in the Circuit Court of St. Louis County. It was in two counts.

Count I was brought under the provisions of the Missouri Clean Water Law, §§ 204.-006, et seq., RSMo Supp.1975. It was alleged that injury was caused to the waterways of Missouri and their environs, to the fish and wildlife in and around those streams, and to the aesthetic, recreational and economic values thereof. The prayer was for costs, attorneys' fees necessarily incident to the suit, actual damages of $1,000,000 and "statutory" penalties of $2,000,000.

Count II, with the state alone as plaintiff, was brought as a common-law action for nuisance. Therein, it was alleged that Dresser constructed and maintained the settling basin which it knew, or should have known, was unsafe; that the rupture of the dam and resulting discharge constituted a public nuisance; and, that the State of Missouri, acting in its sovereign capacity as "trustee for its citizens," was empowered to recover damages for such a nuisance. Again, the prayer asked for an award of $1,000,000 actual damages and $2,000,000 punitive damages.

Service was had upon Dresser at the office of its registered agent in the city of St. Louis. It thereafter filed motions to dismiss and to strike certain allegations in the petition, which were overruled by respon-

dent.[1] The principal contentions in the petition for the writ of prohibition are essentially those made in the overruled motions. They may be summarized, generally, as follows:

1. The state cannot recover damages to its alleged quasi-sovereign interest pursuant to a common-law nuisance action.

2. Even though the law be otherwise, damages are not recoverable under a nuisance theory, because the relatively new Clean Water Law has preempted the field of "public nuisance" in water pollution cases.

3. Damages are not recoverable by the state under the Clean Water Law, Chapter 204, because the statutory provisions are unconstitutional in that they:

   (a) impermissibly delegate legislative authority to the commission, (b) violate due process by the imposition of statutory penalties for days following the initial rupture of the dam, (c) are vague and indefinite and (d) are *ex post facto* in nature.

4. Venue in St. Louis County is improper in that § 204.076.1 of the Clean Water Law provides for venue elsewhere.

We do note, in passing, the rather ingenious approach presented in the points listed in that it is argued (1) that the field of common-law public nuisance (in the area of water pollution) has been pre-empted by a Clean Water Law (2) which is then alleged to be unconstitutional. Nevertheless, such alternative pleading is an approved practice. Rule 55.10.

For reasons hereinafter discussed, we believe that the sole and ultimate question before us, within the most appropriate limitations of this prohibition proceeding,[2] is

---

1. The only docket entry made by respondent, as shown by the record before us, provided: "Defendant's Motion to Dismiss, to Strike, or to Make More Definite, heretofore submitted, said motions are hereby overruled. Defendant

granted 60 days in which to answer or otherwise respond to plaintiffs' interrogatories."

2. Prohibition is a discretionary remedy and should be denied where an adequate remedy by

whether or not respondent, Judge Ruddy, has jurisdiction to act in the premises; or, asked more simply: does venue lie in St. Louis County?

Two statutes designating "venue" are involved.

Section 508.040, RSMo 1969, in part, provides: "Suits against corporations *shall* be commenced either in the county where the cause of action accrued . . . or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."

(Emphasis added.)

Section 204.076.1 (being part of the Clean Water Law), in part, provides: "Suit *may* be brought in any county where the defendant's principal place of business is located or where the water contaminant or point source is located or was located at the time the violation occurred."

(Emphasis added.)

Section 204.131 is relevant to the issue of venue, in this particular case, in that it provides in part that: "Nothing in [the Clean Water Law] alters or abridges any right of action now or hereafter existing in law or equity civil or criminal, . . . ."

In seeking an answer to the question, as posed, we believe it necessary to determine (1) the viability in Missouri of the common-law public nuisance theory asserted by the state, absent the Clean Water Law; and (2) if the same be sustained, whether or not the new law has now pre-empted state action in connection with the "pollution of the waters" of this state notwithstanding § 204.131, just noted.[3] We necessarily consider Count II first.

■ A "public nuisance is an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B(1) at 87 (1977). It often is defined as a behavior which interferes with

the health, safety, peace, comfort or convenience of the general community. While distinguishable, common-law "public" and "private" nuisance law often are overlapping and interrelated. They need not be mutually exclusive approaches to an alleged nuisance factual situation. Keeping waterways of the state free from harmful contaminants is an objective common to the public at large and has long been so recognized. Conduct causing the same is essentially the "nuisance." *State ex rel. Wear v. Springfield Gas & Electric Co.*, 204 S.W. 942 (Mo.App.1918). A private individual thereby damaged, to seek damages or other relief, must evidence an injury which is special or distinctively different from that suffered by the general public. Whether or not the latter can be established and asserted is not immediately relevant because it remains the duty and responsibility of the state to protect the general public. Section 27.060, RSMo 1969, provides, in part, that: "The attorney general shall institute, in the name and on the behalf of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights and interests of the state . . . ."

Section 204.011, in part, provides: "[T]he pollution of the waters of this state constitutes a menace to public health and welfare, creates a public nuisance, is harmful to wildlife, fish and . . . ." Such statutory declarations merely re-enforce the accepted law. As said in *Commonwealth ex rel. Shumaker v. New York & Pennsylvania Co.*, 367 Pa. 40, 79 A.2d 439 (Pa.1951), while the court was examining its Clear Streams Act (35 P.S. § 691.1 et seq.), at 444:

[t]his section of the act is but declaratory of the common law relating to nuisances, for corruption of waterways has long been recognized as both a public and private nuisance.

appeal exists, *State ex rel. Vogel v. Campbell*, 505 S.W.2d 54, 58 (Mo.banc 1974); neither should it lie merely because it would be more convenient than an appeal, *State ex rel. Sexton v. Roehrig*, 323 Mo. 515, 19 S.W.2d 626 (Mo. 1929). See also Mo.Dig., Vol. 24, *Prohibition*, ⚍3(2).

3. "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance'." W. Prosser, Law of Torts, § 86 at 571 (4th ed. 1971).

Furthermore, there is a growing tendency "to treat significant interferences with recognized aesthetic values or established principles of conservation of natural resources as amounting to a public nuisance." Restatement (Second) of Torts § 821B, Comment e at 91 (1977). In *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237, 27 S.Ct. 618, 619, 51 L.Ed. 1038 (1907), the court recognized a state's right to sue for injury in its quasi-sovereign capacity, while stating: "In that capacity the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. . . ."

*Hawaii v. Standard Oil Co. of Calif.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), relied on by both parties in the instant case, did not deny the state's right to bring suit in its quasi-sovereign capacity, but only ruled that such an interest was not cognizable under the provisions of the Clayton Act.

■ Actual and punitive damages are permitted in conjunction with the maintenance of suits involving private nuisances. *Bower v. Hog Builders, Inc.*, 461 S.W.2d 784 (Mo.1970); *Ruppel v. Ralston Purina Co.*, 423 S.W.2d 752 (Mo.1968); *Vaughn v. Missouri Power & Co.*, 89 S.W.2d 699 (Mo.App. 1935). Injunctions or abatements have been the traditional remedies where the state brings suit for a public nuisance, 66 C.J.S. *Nuisances* § 77 (1950), but the prayer in Count II of the state's petition, admittedly based on the common law, seeks "damages" only. Neither party has cited any precedent in this state wherein it was declared that "damages," absent some statutory authority, were or were not recoverable by public authorities for a public nuisance. Argument is made that such a recovery should follow necessarily, based on the theory that a protectible interest of the state is recognized; that such an interest can be harmed; that a legitimate interest which can be harmed is entitled to a rejuvenating compensation to repair that interest, including past injuries wrongfully caused by a nuisance; that absent such recovery, those causing damage to a public interest suffer no penalty whatever if the "cause" has been corrected and no private individual can show a "special" damage; that abatement or injunctive relief in retrospect would be a moot issue and constitute no relief at all. Whether or not actual or punitive damages are appropriate, in any event, would depend on the facts of a particular case. Punitive damages usually follow gross negligence on the part of a defendant or willful or continual perpetration of tortious activity. Absent any relevant factual record, we leave it to the trial court in the first instance, to determine whether or not damages are appropriate or allowable under Count II.

■ Did enactment of the Clean Water Law, Chapter 204, pre-empt the field of water pollution "public nuisance" law in Missouri? We have concluded that it did not. Section 204.131, heretofore quoted, in part declares that the Act does not alter or abridge "any right of action" now existing. In so providing, it is apparent that the General Assembly intended to *expand* rather than restrict available remedies. In accordance with the prescriptions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq., § 1253 (1976), the Clean Water Commission was created under the Department of Natural Resources in 1972. §§ 204.021, 204.136, RSMo Supp.1975. Eminent among its duties is the development of "comprehensive plans and programs for the prevention, control and abatement of new or existing pollution of the waters of the state." § 204.026.2. In *State ex rel. Ashcroft and Missouri Clean Water Commission v. Union Electric Co.*, 559 S.W.2d 216 (Mo. App.1977), the court stated, at 221, that the new law ". . . is ensconced in a broad, pervasive legislative intent to keep the 'waters of the state' free of 'pollution' from *external* causes and sources." We agree that the statutory scheme envisions a comprehensive remedial approach to water pollution problems, but preservation of common law remedies is consistent therewith—simply because preservation thereof strengthens and makes cumulative the powers of those charged with taking corrective measures. Decisions in other states are

generally consistent with such a finding. Annot., 32 A.L.R.3d 215, 310 (1970). Because of the provisions of § 204.131, nothing could be gained by an effort to analyze cases holding otherwise, and we hold that enactment of Chapter 204 did not proscribe common-law nuisance actions for pollution of streams and waterways on behalf of the state or private individuals.

■ Lastly, we consider Dresser's argument that even though it be assumed that the Clean Water Act is constitutional and that it did not pre-empt common-law actions for public nuisances, that venue is yet improper in St. Louis County where the underlying suit was filed. It is argued that § 508.040 is inapplicable because Chapter 204 has its own venue provisions in § 204.076.1 which work to the exclusion of venue provisions found elsewhere; that the General Assembly, had it wanted § 508.040 to apply, would not have promulgated a special section for venue. For several reasons, we believe the argument should be rejected. Section 508.040 would not apply in similar actions against individuals, partnerships or other recognized entities because it applies only to corporations and the need for § 204.076.1 is obvious. While quoting the two sections, heretofore, we did emphasize that § 508.040 provides where actions against corporations "shall" be brought and that § 204.076.1 provides where they "may" be brought. It is argued by Dresser that "may" frequently is used interchangeably with "shall" and often is read as being mandatory, and, in this instance, being "specific" should control over "general" provisions. To the contrary, the state (respondent) submits that § 204.076.1 is clearly permissive and that to read a mandatory effect into the word "may" would do injustice to the remedial intent of the legislature, which, it is argued, was to expand rather than restrict remedial actions against polluters of waterways.

In *State v. Kraus*, 530 S.W.2d 684 (Mo. banc 1975), the court, at 685, stated that: "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. [Citations]." Furthermore, statutory provisions should be harmonized whenever possible. *Consolidated School Dist. No. 1 of Jackson County v. Bond*, 500 S.W.2d 18, 22 (Mo.App.1973). To the extent the general statute is repugnant to the special statute, the latter should prevail. *Bauer v. Rutter*, 256 S.W.2d 294, 297 (Mo.App.1953).

"Statutes enacted for the protection of life and property, or which introduce some new regulation conducive to the public good, are considered remedial in nature and are generally given a liberal construction. 82 C.J.S. *Statutes* § 388 at p. 918; 50 Am. Jur. *Statutes* § 395, p. 420 * * *. Where a statute is both remedial and penal . . . it should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought." *City of St. Louis v. Carpenter*, 341 S.W.2d 786, 788 (Mo.1961). Chapter 204, in that it provides not only for injunctive relief or actual damages but also specified penalties, is in connection with the latter surely penal in nature. Nevertheless, a strict construction of § 204.076.1 does not necessitate a reading of the venue provision as exclusive and mandatory. Indeed, just the opposite would seem to be true. Strict construction mandates that a court give a statutory provision no broader application than is warranted by its plain and ordinary meaning. The plain and ordinary meaning of the word "may" is permissive. "It has long been the rule that the word 'may' in a statute, unless the contrary is otherwise indicated therein, is generally held to be permissive, not mandatory. *State ex inf. McKittrick v. Wymore*, 343 Mo. 98, 119 S.W.2d 941, [944] [Mo.banc 1938] . . ." *Bloom v. Missouri Board for Architects, Professional Engineers & Land Surveyors*, 474 S.W.2d 861, 864 (Mo.App.1971). Nothing in Chapter 204 evidences a legislative intent to use "may" in anything other than a permissive sense, and we so construe the

venue portion of § 204.076.1.[4] It is of some interest that similar permissive language was used in § 260.240.1 (Solid Waste Act) and § 203.151.1 (Air Conservation Act), RSMo Supp.1973, which are comparable "Acts."

Thus, having found § 508.040 applicable in the underlying action, it necessarily follows that St. Louis County is an approved forum and that respondent, Judge Ruddy, has jurisdiction not only of the "subject matter" but also the "person" of relator, defendant therein; and, that the preliminary writ heretofore issued should be quashed and for naught held.

We have concluded that other issues presented here, including certain constitutional challenges to the Act, should not be considered in this extraordinary proceeding because they may or may not be relevant in the actual trial court proceeding. We refrain for several reasons.

The state agrees that it has presented its cause by "alternative" pleading and in no event could recover under both Count I and Count II. If the election made is to proceed under Count II (common-law nuisance), challenges to the statutory enactment (Chapter 204) would not be relevant and comments thereon at this time would be pure dicta.

If the state elects to proceed under Count I, such issues may or may not arise. One example should suffice. Dresser alleges the Act constitutes an unacceptable and unconstitutional delegation of legislative authority to the commission. We do not comment on the argument as made but only mention the state's present contention, which is: that the legislature designated its own proscriptions reference pollution prior to making any "delegation"; that pollution is defined in § 204.016.7, that § 204.051.1(1) declares it unlawful "To cause pollution of any waters of the state . . ." and, thereafter in § 204.051.1(2) it is declared, disjunctively, unlawful to create conditions below "standards established by the commission"; and, that § 204.076 declares the penalty to be assessed, again disjunctively, for violations of the statutory standards "or" any standard, rule or regulation promulgated by the commission. Thereafter, it is submitted that paragraph 14 of the petition is based on the statute and that paragraph 15 thereof is based on alleged violations of "effluent limitations" of the commission, and that any challenge based on "delegation" may or may not be relevant at trial or on appeal, if any. Furthermore, there are several "factual" matters to be resolved.

The extent to which we have "refrained" in this discretionary proceeding is consistent with the established law of this state. "[A] constitutional question in any event should be decided only if essential to ruling the case presented." *City of St. Louis v. Missouri Comm'n On Human Rights*, 517 S.W.2d 65, 71 (Mo.1974); *State ex rel. Ken Reynolds Pharmacy v. Pyle*, 564 S.W.2d 870 (Mo.banc 1978); *State v. Moody*, 443 S.W.2d 802, 804 (Mo.1969); *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, 452 (Mo.banc 1964). See also *State ex rel. Webb v. Satz*, 561 S.W.2d 113 (Mo.banc 1978).

The preliminary writ should be and hereby is quashed.

BARDGETT, C. J., DONNELLY, RENDLEN and SEILER, JJ., and FINCH, Sr. J., concur.

---

4. Had the General Assembly intended the result urged by Dresser, it easily could have used the word "shall" as it has done in other general and specific venue statutes. See § 508.010 ("suits instituted by summons shall, except as otherwise provided by law, be brought"); § 508.020 ("suits commenced by attachment . . . or in replevin . . . shall be brought"); § 508.030 ("suits for the possession of real estate . . . shall be brought"); § 508.040 ("suits against corporations shall be brought"); § 296.050.3 ("venue [for judicial review of decisions of the Human Rights Commission] shall . . . be"); § 350.030 (Forming—Corporations, "the Attorney General . . . shall institute an action in"); § 259.210 (the Oil and Gas Council "shall bring suit . . . in . . ."). If in other statutes on the same subject the legislature employed words adequate to express a certain meaning, such fact is of persuasive value in considering the words of later statutes not using the same but claimed to possess such meaning.

WELLIVER and HIGGINS, JJ., not participating because not members of the Court when cause was submitted.